## HATTIE HAWKINS v. JAMES SMITH and L. C. WHITTAKER, Appellants.

### In Banc, May 20, 1912.

1. **CONSTITUTIONAL LAW: Due Process: Equal Protection of the Laws: Mining.** Secs. 5440-5444, R. S. 1909, making operators of mines liable for damages sustained by any servant by reason of the negligence of a fellow-servant, are not invalid as in contravention of the Fifth and Fourteenth Amendments to the Federal Constitution or of section 30, article 2, and section 53, article 4, of the Missouri Constitution, guaranteeing due process of law and the equal protection of the laws. In view of the unusual hazards incident to the labors of miners, legislation applicable to them as a class has frequently been upheld.

2. ———: ———: ———: ———: **Classification for Legislative Purposes.** Nor is the act invalidated by the fact that it excludes from its benefits certain workmen employed above ground. There is a broad distinction discernible between the hazards incident to the performance of their duties by those miners engaged in working beneath the earth's surface and those attendant upon the doing of the work which is done above the surface.

3. ———: ———: ———: ———: **"Producing."** Nor is the act invalid because it applies only to "producing" mines, thus excluding prospectors, and explorers. It is not for that reason violative of the constitutional inhibition against class legislation, nor does it deny the equal protection of the laws.

4. ———: **Class Legislation.** The Legislature may exercise a wide discretion in selecting and classifying objects of legislation, and it is only when the legislative *power* has been transcended that the courts may interfere.

5. **NEGLIGENCE: Survival of Cause of Action: Mining.** In case of the death of a person injured in mining in such manner as to make the operator of the mine liable under section 5440, Revised Statutes 1909, the widow of the deceased may recover.

6. **STATUTES: Enactment by Assumption.** The Legislature cannot bring a statute into existence by merely assuming, in another independent statute, that it exists.

7. ———: ———: **Construction: Intent.** When the language of a statute is unequivocal and unambiguous, mere assumption in one of its sections that the others possess a meaning at war

with the clear import of that language will not justify the court in construing into those sections the assumptions thus made.

8. **NEGLIGENCE: Survival of Cause: General Statute.** Section 5426, Revised Statutes 1909, providing that when death shall be caused by the wrongful act of another, and the act is such as would, if death had not ensued, have entitled the person injured to recover damages, the person guilty of the act shall be liable to an action for damages, notwithstanding the death of the person injured, is general and applies to causes of action created subsequently to the passage of the statute.

9. **STATUTES: Amendment by Inference.** The Legislature cannot amend a statute by inference from acts subsequently passed.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray*, Judge.

AFFIRMED.

*Spencer, Grayston & Spencer* for appellants.

(1) Plaintiff's action is based on the Act of May 10, 1907. (Laws 1907, p. 251). This may give a right of action to the injured agent or servant, but does not transmit any cause of action to the widow in case the agent or servant is killed. Strottman v. Railroad, 211 Mo. 227; Broadwater v. Railroad, 212 Mo. 437; McMurray v. Railroad, 125 S. W. 751; Henderson v. Railroad, 133 S. W. 151. (2) The Act of May 10, 1907, is unconstitutional under the provision of: 1st. The Fourteenth Amendment to the Constitution of the United States. 2nd. The Fifth Amendment to said Constitution. 3rd. Section 30 of article 2 of the Constitution of Missouri. 4th. Section 53 of article 4 of said Missouri Constitution, because the act abridged the privileges and immunities of citizens of the United States and deprives persons of property without due process of law, and denies to the operators of certain mines the equal protection of the law. Because by the act the property of certain mine operators is taken without due process of law. - Because the act is special

242 Sup.—44

or class legislation. Because it undertakes to make an arbitrary and unnecessary classification of certain laborers not based on any substantial difference between them and other laborers. Because it improperly undertakes to make a classification between mines producing and mines not producing lead, zinc, coal or other valuable minerals, and is therefore class or special legislation. Lochner v. People, 198 U. S. 45; Railroad v. Ellis, 165 U. S. 150; Paddock v. Railroad, 155 Mo. 524; State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 163; State ex rel. v. Miller, 100 Mo. 439; State ex rel. v. Ashbrook, 154 Mo. 375; In re Flukes, 157 Mo. 125; Railroad v. Westby, 178 Fed. 619. The act in question provides that every person, etc., operating a mine producing lead, etc., or other valuable minerals, shall be liable for all damages sustained by any servant or agent thereof while engaged in operating such mine, by reason of the negligence of any other agent or servant thereof. Then the operation, construction and repair of concentrating mills, flumes and tramways wholly above ground is expressly excluded from the provisions of the act. A difference is made between mines producing and those not producing lead, zinc, coal and other valuable minerals. A distinction is also made between the acts of fellow-servants in mining and getting the ore, on the one hand, and in cleaning same and preparing it for market. The act also attempts to make a rule as to such mines different from that applicable to the other business carried on in the State. There is no basis for any of these attempted classifications.

*F. L. Williams, R. A. Mooneyham* and *P. D. Decker* for respondent.

(1) Assuming that the act approved May 10, 1907, known as the Mining Fellow-Servant Law, is valid, the plaintiff has a right to maintain this cause of action. By virtue of said fellow-servant law J.

Hawkins, plaintiff's husband, had a right to maintain a cause of action if he had lived. Laws 1907, p. 251. Section 2865, R. S. 1899, now section 5426, R. S. 1909 deals with the same subject as the Mining Fellow-Servant Law, to-wit, liability for personal injuries. The two statutes are cognate and in *pari materia.* They are supplemental to each other and must be considered together. By virtue of said survival act, section 2865, whatever cause of action Hawkins would have in case he had lived is transmitted to his widow, the plaintiff. Racho v. Detroit, 90 Mich. 92; Philo v. Railroad, 33 Iowa, 47; Powell v. Sherwood, 162 Mo. 605; State v. Klein, 116 Mo. 264; State v. Kimball, Wils. 174 (Ind.); Coats v. Barrett, 49 Ill. App. 175. When the Legislature passed the fellow-servant mining act giving a cause of action to the injured party, if he lived, it naturally thought that this cause of action would be transmitted to his widow and orphans in case the injury resulted in death. This is clearly shown by section 4 of the Mining Fellow-Servant Act. Why should the Legislature specifically forbid the employer to make a contract limiting his liability based upon the contingency of death if said Legislature intended that death of the injured party would end the liability of the employer? (2) The Act of May 10, 1907, is constitutional. The reasons urged against its constitutionality are the identical reasons which were urged against the constitutionality of the Railroad Fellow-Servant Law, and which were considered and overruled by this court in the case of Powell v. Sherwood, 162 Mo. 617. We admit that classification for legislative purposes must have some reasonable basis upon which to stand. The peculiar and unusual hazards incident to the labor of miners forms a sufficient basis for legislative discrimination to establish classification. The difference in the hazards and nature of the work of the men who dig the ore underground and the men

who clean the ore on top of the ground is a sufficient basis to justify the Legislature in excepting the men on top of the ground from the application of the law. The Legislature did not intend to make and did not make a distinction between mines producing and mines not producing ore. The word "producing" should be taken with the context and not considered alone. It was used in the sense of description and not of limitation. The phrase, "a mine producing lead, zinc, coal and other valuable minerals," means the same as the phrase "lead, zinc, coal and other valuable mineral producing mine." If the Legislature had intended, as appellant suggests, to exempt mines that were not producing ore, it would have said so in plain and unequivocal terms as it did when it exempted men employed above ground in section 4a. Powell v. Sherwood, 162 Mo. 617; Wilmington v. Fulton, 205 U. S. 60.

BLAIR, C.—J. Hawkins having met death in one of appellants' lead and zinc mines by reason of the negligence of a fellow-servant, his widow brought this suit and recovered judgment under the Act of May 10, 1907 (Secs. 5440-5444, R. S. 1909), known as the "Mining Fellow-Servants Law."

To reverse that judgment appellants' counsel contend that (1) the act mentioned is unconstitutional and (2) no cause of action survives to respondent under the facts stated.

1. It is insisted that the act under which judgment was recovered contravenes the provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States and of section 30, article 2, and section 53, article 4, of the Constitution of Missouri.

An inspection of sections 5440-5444, Revised Statutes 1909, discloses that the draughtsman followed closely the fellow-servant law applying to railroads,

the constitutionality of which has been upheld by this court against substantially the same objections made to the act now in question (Powell v. Sherwood, 162 Mo. 605), and in this case as in that, the argument is virtually confined to an effort to maintain that the classification adopted for the purposes of the law is purely arbitrary and, therefore, legally indefensible.

In view of the unusual hazards incident to the labors of miners, legislation applicable to them as a class has frequently been upheld by this and other courts (Hamman v. Cen. Coal & Coke Co., 156 Mo. 232; State v. Murlin, 137 Mo. 297; State v. Cantwell, 179 Mo. 245, and cases cited), and, generally speaking, we see no reason for concluding that an act abolishing the fellow-servant rule in the case of miners is any more open to the objections that it results in a denial of the equal protection of the laws and is a deprivation of property without due process of law than are the many enactments of like character relating solely to railroads and whose constitutionality has often been vindicated by the courts.

In the case of Hamman v. Cen. Coal & Coke Co., supra, this court gave full recognition to the principle that the dangers of mining are so great, unusual and distinctive in character as to warrant legislation specially applicable to those engaged in that occupation, subjecting mine operators to greater liability than others in case of the death of a miner from actionable negligence. The act upheld in that case was not like that attacked in this, but the principle applied is amply sufficient, we think, to justify the conclusion that the fact that the act in question applies to miners only constitutes no infringement of the constitutional provisions mentioned.

In view of this and other recognitions by this court of the fact that for the purposes of legislation, the basis of the distinction between mining and other occupations is like in character to that which sup-

ports the validity of fellow-servant legislation applicable solely to railroads, we are convinced that the Legislature possesses full power to enact similar legislation affecting miners and mine operators as a distinct class. In fact, the contrary is not seriously contended in this case.

In two respects, however, appellants assert that the Legislature has improperly exercised its power so to legislate, in that the act (1) excludes from its operation those engaged in certain duties on the surface and (2) is applicable only to *producing* mines.

There is a broad distinction discernible between the hazards incident to the performance of their duties by those miners engaged in working beneath the earth's surface and those attendant upon the doing of the work which is done upon the surface. This seems sufficiently obvious without further statement.

Previously in this paragraph attention has been called to the principle which justifies the Legislature in classifying miners and mine operators for legislative purposes and that principle furnishes adequate support for the distinction made in the act between classes of miners engaged in duties distinctly different in character and with resepct to the dangers attendant upon them.

In addition to this it may be that appellants are not in a position to raise this question. All mine operators in a like situation with appellants fall within the purview of the act. The discrimination, if any, is against certain mine employees, and as to them mine operators are subject to no new liability. The argument being that the defect in the act consists in a failure to include all miners in a like situation with those included necessarily concedes the propriety of the legislation if all were so included. What discrimination against appellants can be asserted as arising from a failure to extend their liability further than is done? Is not the discrimination, if any, against

those excluded from the benefits of the act and, if so, on what principle can appellants complain? It is not necessary to decide this question, nor do we decide that those excluded from the terms of the act might not be included on some broader distinction than that which marks the boundaries of the class to which the act being considered applies. Since the act includes "all who are or who may come into like situations and circumstances" it is no reason for declaring it invalid that others subjected to less and different dangers are not included within the purview thereof though they be employed by the same person or corporation and engaged in another department of the same service. The difference between the situation of those engaged above and those underground patently "bears a reasonable and just relation to the act in respect to which the classification is proposed" and this is all that is required. [Gulf C. & S. F. R. Co. v. Ellis, 165 U. S. 150; Bradford Construction Co. v. Heflin, 88 Miss. 314.]

It is also argued that the effect of the use of the word "producing" in the first section of the act (Sec. 5440, R. S. 1909) is to restrict the class affected to mines producing mineral and to exempt from the liabilities imposed prospectors and others whose mines have not yet reached the point of production, and that such exemption denies appellants the equal protection of the laws, and is violative of the constitutional inhibition against class legislation.

The conclusion announced does not follow from the premise laid down. Undoubtedly the Legislature possesses the power to "select and classify objects of legislation," and just as undoubtedly may exercise a wide discretion in the exertion of that power.

"There is, therefore, no precise application of the rule of reasonableness of classification, and the rule of equality permits many practical inequalities. And necessarily so. In a classification for governmen-

tal purposes there cannot be an exact exclusion or inclusion of persons and things." It is "sufficient to satisfy the demand of the Constitution if a classification is practical and not palpably arbitrary." [Louisville & Nashville R. R. v. Melton, 218 U. S. 1. c. 55.] "The selection, in order to become obnoxious to the Fourteenth Amendment, must be arbitrary and unreasonable, not merely possibly, but clearly and actually so." [Bachtel v. Wilson, 204 U. S. 1. c. 41.] Again, "A classification may not be merely abitrary, but necessarily there must be great freedom of discretion even though it result in ill-advised, unequal and oppressive legislation." [Heath & Milligan Co. v. Worst, 207 U. S. 1. c. 354; Callahan v. Railroad, 170 Mo. 1. c. 494; Holden v. Hardy, 169 U. S. 1. c. 393, *et seq.*; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61; St. Louis Cons. Coal Co. v. Illinois, 185 U. S. 203.]

The Legislature in the exercise of its power to classify is not required to trace with a hair line the boundaries of the class to which the resulting enactment shall apply.

Neither State nor Federal Constitution proceeds upon the assumption that the Legislature is omniscient, nor is the discretion of that magistracy to be superseded by that of the courts in any case. It is only when the limits of legislative *power* have been transcended that the courts may extend a restraining hand.

In the case of Minnesota Iron Co. v. Kline, 199 U. S. 593, the constitutionality of the Minnesota law abolishing the fellow-servant rule in the case of employees of railroads was drawn in question. By a proviso in that statute a construction rendering "any railroad company liable for damages sustained by any employee, agent, or servant, while engaged in the construction of a new road, or any part thereof, not open to public travel or use" was forbidden. The statute was by the Supreme Court of Minnesota held

applicable to a narrow guage road used by a mining company for conveying away the earth "stripped" from the surface of the mine.

In responding to the argument that so construed the act was obnoxious to the provisions of the Four-teenth Amendment, the Supreme Court of the United States (*Ibid.*, p. 597) said:

"We are of a different opinion. Sometime must be fixed when the law shall begin to operate and the time when the road is finished is a natural and proper time. There may be unavoidable and exceptional dangers before the track is finished and while cars are being run over it for construction purposes, and the Legislature might think it proper that the servant should take the risk of these even if the negligence of a fellow-servant co-operated, just as he takes the risks of the known peculiar dangers when he sets about repairing the effects of an accident. The fact that there may be also dangers like those on the finished road does not prevent the Legislature from considering the situation as a whole and keeping the old rule on practical grounds until the exceptional risks come to an end. . . . Of course there is no objection to legislation being confined to a peculiar and well-defined class of perils, and it is not necessary that they should be perils which are shared by the public, if they concern the body of citizens engaged in a particular work. [Holden v. Hardy, 169 U. S. 366.] . . . The whole case is put on the proviso, and the argument with regard to that is merely one of the many attempts to impart an overmathematical nicety to the prohibitions of the Fourteenth Amendment."

The principle thus announced supports equally well the exclusion from the operation of the act of May 10, 1907, of those engaged in prospecting and in merely explorative work antecedent to the taking of minerals from mines. So far as differences of opinion as to the propriety, policy and even justice of classi-

fications for the purposes of legislation are concerned, the Legislature is the final arbiter of all so long as it acts within the range of its wide discretion.

The more liberal construction given the act of 1907 respondent's counsel would render its constitutionality quite as apparent. Since, however, even when construed as appellants insist it must be, it is not in conflict with the constitutional provisions, State and Federal, relied upon, it is not necessary to decide whether that construction is not narrower than the language of the act justifies.

2. The principal contention of appellants' counsel is that the right of action given by section 5440, Revised Statutes 1909, is given solely to the injured employee and his widow cannot recover in case the injuries result in death. The case of Strottman v. Railroad, 211 Mo. 227, is relied upon as conclusive of the correctness of this view of the law.

It is pointed out that the act under which the judgment in this case was recovered is, in all respects pertinent to the rule announced in the Strottman case, a rescript of the Act of 1897 (Secs. 5434-5437, R. S. 1909) under which that case was decided and it is urged that this ends the argument and a judgment of reversal must follow. Counsel for respondent do not deny this conclusion if the rule mentioned is to be followed, but, while courteously mindful of all the respect due a solemn decision of this court, deliver an attack upon the decision mentioned which is so forcible and effective that the writer and his brother Commissioner feel it cannot be ignored or met by simple reference to the decision whose accuracy is thus questioned.

In this case, apparently for the first time, the attention of this court is directly called to the language of section 5437, Revised Statutes 1909, as indicative of the legislative intent that a cause of action under section 5434, Revised Statutes 1909, should survive the death of the injured party. That section is for all the

purposes of this decision, identical with section 5444,
Revised Statutes 1909 (Sec. 4, Act of May 10, 1907)
and reads as follows:

"No contract made between any railroad corpor-
ation and any of its agents or servants, based upon
the contingency of the injury or *death* of any agent
or servant, limiting the liability of such railroad cor-
poration for any damages under the provisions of
section 5434 to 5437, inclusive, shall be valid or bind-
ing, but all such contracts or agreements shall be null
and void."

It is to be observed that the words "section 5434
to 5437, inclusive" appearing in this section in the
Revised Statutes were inserted by the Revision Com-
mission of 1899 as a substitute for the words "this
act" for the purpose of confining the reference indi-
cated to the sections of the original act after its in-
corporation in the Revised Statutes by that Commis-
sion as a part of the chapter on "Damages in Actions
for Torts," and that, consequently, they are not to be
interpreted as indicating that all the sections men-
tioned, severally, confer rights of action.

At the time of the passage of the Act of 1897,
abolishing the fellow-servant rule so far as it affected
employees of railroad companies, it was settled law
that contracts between masters and their servants
limiting the liability of the master for injuries to such
servants resulting from the negligence of the master
or of vice-principals were void as against public pol-
icy. [Blanton v. Dold, 109 Mo. l. c. 75, 76, and cases
cited; Himrod Coal Co. v. Clark, 197 Ill. l. c. 519; Rail-
road v. Spangler, 44 Ohio St. l. c. 476; Johnson v. Rail-
road, 55 S. C. l. c. 160; 26 Cyc. 1094.] In view of this
fact there was no need of prohibiting by statute con-
tracts between railroad companies and their em-
ployees, limiting liability for injuries from negligence
actionable prior to 1897. The fact that the language of
the first section (5434) is general does not destroy the

correctness of this conclusion. Though section 5437 might be construed to be declarative of the former law so far as it concerns contracts limiting liability for injuries from negligence theretofore actionable, it cannot be construed to be solely that without convicting the Legislature of going outside the real remedial purpose and intent of the act and incorporating therein an entirely useless provision.

It is true that acts are sometimes passed whose plain effect is merely declaratory of former laws, but statutes are not construed to have solely that effect when, as in this case, a different purpose is clearly within their language as well as germane to other and new provisions enacted in immediate connection with them, and in harmony with the dominant legislative purpose giving rise to their enactment.

On the other hand, in 1897, the question whether a 'contract relieving the master from liability arising under a "fellow-servant law" for injuries resulting to his employee from the negligence of a fellow-servant was valid, was one not only undecided in Missouri, but unsettled elsewhere (Railroad v. Eubanks, 48 Ark. 460; Griffiths v. Earl of Dudley, L. R. 9, Q. B. D. 357; Johnston v. Fargo, 184 N. Y. 379; Ibid., 7 L. R. A. [N. S.] 537, and note), and the language of our own court in Blanton v. Dold, 109 Mo. 64, to the effect that a "contract . . . by an employee, exempting his master from liability for negligence in the performance of his *personal duties* toward the former" is void as against public policy is construed by one writer (7 L. R. A. [N. S.] supra) as indicating that *this court* may have had in mind a distinction in that respect between liability for the neglect of duties resting primarily upon the master and for the neglect of duties for which he is not liable save by force of an act like that under examination. Whether such a distinction is maintainable is no concern of ours at this time.

The fact that the question was unsettled was sufficient to put the Legislature on guard.

There was, therefore, absolutely no reason why the Legislature should have included in the act a provision invalidating contracts against liability for death unless the right of action clearly given for injuries resulting from the negligence of a fellow-servant was transmissible in case of death, but there was a convincing reason for such inclusion if such right of action was transmissible. It is consequently necessary to hold the right of action given to be transmissible in case of death or we must convict the Legislature of doing a useless and reasonless thing in appending section four to the Act of 1907. This kind of a construction is not put upon statutory provisions unless there is no other reasonable construction possible. [Strottman v. Railroad, 211 Mo. l. c. 251, 252.]

We have not overlooked the rule that the Legislature cannot bring a statute into existence by merely assuming, in another independent statute, that it exists. [State v. Goffee, 192 Mo. l. c. 688.]

Nor is it contended that in case the language of an act is unequivocal and unambiguous mere assumption in one of its sections that the others possess a meaning at war with the clear import of that language can justify this court in construing into those sections the assumption thus made.

The language of section 5434, however, is general and it requires no construction, as that term is often used, or explanation to bring within its terms the employee who is injured by the negligence of a fellow-servant.

At any rate, it ought not to be claimed that language thrice assumed by this court to give a cause of action transmissible by the general law, the limitation upon which is found in express language in no statute but is reached solely by that process called construction, as the opinions in the Strottman case

disclose, is so clear and unequivocal that the sign-board put up by the Legislature in the act itself may be ignored entirely by him who seeks the path to the true legislative intent.

In view of all these considerations, the least that can be said of the provision mentioned is that the Legislature by it convincingly evidences its belief at the time that the right of action conferred upon an employee by the Act of 1897 would survive to his widow as did all other rights of action for injuries in existence at the time. Of course that single provision, of itself, neither created nor transmitted a cause of action, nor do respondent's counsel so contend.

The attention of this court being now, for the first time, called to the fact that the act itself points in a direction contrary to that taken by this court in the Strottman case, we feel compelled to inspect that decision by aid of the new light thus thrown upon it.

In the report of that case three opinions appear, one of three judges, another concurring with the conclusion reached in that, and the third a dissenting opinion.

In that case it was, of course, conceded by all concerned that the Act of 1907 gave to railroad employees a right of action against the company for injuries resulting from the negligence of a fellow-servant, a cause of action not theretofore existing in such case. It was also conceded by all that the act mentioned did not in and of itself make any provision for the survival of that cause of action in case of the injured employee's death by reason of the injuries out of which his own cause of action accrued or would have accrued had he lived. The question was simply whether the action newly given by the act mentioned survived under the provisions of sections 2864, 2865 and 2866, Revised Statutes 1899.

This being the sole issue it is obvious, we think, that the portion of Judge Burgess's opinion discuss-

ing the scope of the title of the Act of 1897 and the effect of the inclusion of certain definitions of "fellow-servants" and "vice-principals" (211 Mo. 1. c. 250, 251, 252, 253) had no logical bearing upon it.

The mere fact that neither the title of the Act of 1907, nor the provisions of the act itself indicated an intent to provide *in that act* expressly that the cause of action given by it for the first time should survive threw no light upon the question whether that cause of action survived by force of the general provisions of another separate and distinct statute enacted long prior to 1897. It is reasoning in a circle to say that the question whether a cause of action, given by an act which does not itself provide for survival, survives under the general law, can be answered by the fact that the former act contained no such provisions.

An examination of the opinions and the questions involved disclose that in order to maintain the conclusion reached in the Strottman case it must be that either (a) the general law providing for the survival of actions in case of death does not apply to statutory causes of action created since the enactment in 1855 of that general law, or (b) that the decisions of this court prior to 1897, to the effect that no right of action accrued against the master in favor of one injured by the negligence of a fellow-servant and therefore none survived in case of death from such injuries, in some way prevents the survival under the general law of such a right of action after it has been conferred upon the servant by express statute.

(a) The first proposition is not expressly relied upon in the opinions in the Strottman case and the fallacy of it is clearly pointed out in the dissenting opinion, and the Missouri cases cited.

No decision of this court is out of harmony with the view that the test to be applied is simply whether the decedent would have had a right to sue had he lived, no matter whether his cause of action was at

common law or under a statute and, in the last case, no matter when the statute was passed.

The language of the general law providing for the bringing of actions in case of death by wrongful act is susceptible of no other construction. The question has been expressly decided in other States under statutes similar to ours. In the case of Ean v. Railroad, 95 Wis. 69, the Supreme Court of Wisconsin, had before it this identical question. George Ean was killed by reason of the negligence of a fellow-servant, and his executrix sued. A Wisconsin statute gave railroad employees a right of action for injuries resulting from the negligence of co-employees engaged in moving and operating trains and the injury to Ean occurred in such manner as to have been actionable under that statute. No provision for the survival of the action was made in the statute but plaintiff relied upon an independent provision (*Ibid.,* l. c. 73) identical with section 5426, Revised Statutes 1909, (Sec. 2865, R. S. 1899), as giving her a right to sue. The defendant contended that the latter was the prior act and that it did not apply to statutory causes of action created after its enactment. The court (l. c. p. 74) said:

"It will be observed that the statute says that 'in every such case the person who, or the corporation which, would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.' To be sure, the rule of strict construction should apply, as the act is in derogation of the common law (Eilers v. Wood, 64 Wis. 422; Smith v. C. M. & St. P. R. Co., supra), if the language is open to construction but, in our judgment, it is not. There is nothing either in the terms or the spirit of the act from which the court can say the legislative idea was to confine its effect to rights of action in favor of injured persons, as the law existed on the subject at the time section 4255 was passed. On the contrary, it is too plain to be open

to serious discussion that the legislative intent was to give a right of action to the personal representatives of a deceased person in all cases where such person would be entitled to recover damages for his injury if death had not ensued.  While it is the duty of the courts to resolve reasonable doubts in favor of the restrictive effect of an act that is in derogation of the common law, it would be going beyond judicial functions to put restrictive words into a law by judicial construction.  We hold that section 4255 applies to this case, and that the ruling of the trial court to the contrary cannot be sustained.''.

In the case of Merkle v. Bennington, 58 Michigan, 156, Chief Justice Cooley in considering a like question, said:

''The action in this case was instituted to recover damages for the death of the plaintiff's intestate, caused, as is claimed, by a bridge being out of repair on a highway in the defendant township.  It was brought under the Statute of 1848 (Sess. L., p. 31), as amended in 1873 (Pub. Acts, p. 127; How. Stat., Secs. 8313, 8314), which is a general statute, and in its first section provides that 'Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action, and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.' The plaintiff recovered judgment in the court below, and the defendant alleges error.

''One error assigned goes to the whole ground of action.  The action for causing death by wrongful

act, etc., is purely statutory, there being none at the common law, and the defense contend that the Statute of 1848, upon which the suit is based, has no application to cases of this nature. When that act was passed townships were not liable for injuries occurring in consequence of defects in their bridges; that liability was created by subsequent statutes. [Commissioners v. Martin, 4 Mich. 557; Leoni v. Taylor, 20 Mich. 148; Medina v. Perkins, 48 Mich. 67.] Under the subsequent statutes the person injured may recover damages, but it is not expressly provided that his representative may recover in case of his death. His representative can therefore recover, if at all, only through the application to the case of the Statute of 1848. But this, it is said, can only be done by very liberal construction of that statute, which, being in derogation of the common law, is to be strictly rather than liberally construed. Such is the argument.

"But the statute of 1848 is in the strictest sense a remedial statute, and as such it should receive not a strict, but a favorable construction. It was passed to remedy a great defect in the law, whereby, through the very severity of the injury which a party's negligence or misbehavior had caused, he in many cases escaped responsibility altogether, though these were exactly the cases in which he ought with most certainty to be held chargeable. But a liberal construction of the statute is not necessary to make it applicable in these cases, for we have only to apply it according to its plain language and intent, and it reaches them beyond question. It is general, and applies 'whenever' a death has been caused under circumstances which would have given a cause of action had the person survived. It was not made for cases which might arise under the law as it then was, but it was enacted to establish a general and very wholesome rule, as applicable to causes of action that might arise under

subsequent remedial statutes as to those arising under the common law or under statutes then existing. The trial judge was right in overruling this defense.''

In the case of Racho v. Detroit, 90 Mich. 92, the action had been brought on the theory that the general provisions of the laws of Michigan passed in 1848 relating to the survival of actions resulting from wrongful act, which were like our own in all respects pertinent to the question involved, transmitted a right of action for death from a defective highway created by a statute recently enacted and the court in considering the question whether such theory was correct (l. c. 96) said:

''If Racho had not died, he would have been entitled to maintain an action against the defendant to recover damages for his injuries. This general law of the State provides that in such case the corporation which would have been liable had death not ensued shall be liable to an action for damages, notwithstanding the death of the party injured. Does section 5 of the Act of 1887 nullify this general law in respect to injuries received upon public streets and highways by reason of the neglect to keep them in repair? We think not. It does not expressly take such injuries out from the operation of the general law, but provides that no municipality shall be liable to any person for *bodily* injuries, except under and according to the provisions of the act, and in the same breath abolishes all common law liability. It was evidently intended by the Legislature that no living person should recover for his bodily injuries, except under or by virtue of the act; but there is no express or implied declaration that, in case such person shall die of such injuries, the right of action shall die with him, or that his personal representatives cannot recover under the general law, as in other cases of negligent injury. This section 5 was aimed at the previous holding of the federal courts that a common law liability

for such injuries did exist in this State, which holding, before the enactment of this statute, permitted a non-resident of the State to recover for injuries received on account of defective streets, bridges, cross-walks and sidewalks in the federal courts, when at the same time there was no remedy in our courts for an inhabitant of this State receiving such injuries. The prohibition of section 5 is directed against persons suing for their own personal injuries, and not against the representatives of a deceased person, suing under the authority of the general law, for injuries to such deceased person, who, if living, could have maintained his action under the Statute of 1887, notwithstanding the prohibition of section 5 of said statute.''

In Eames v. Brattleboro, 54 Vt. 471, the Supreme Court of Vermont had before it an analogous question arising in connection with a death caused by a defective highway. The right of decedent to sue had she lived depended upon the statute. Section 2138 of the Revised Laws of Vermont was in legal effect, so far as concerns the question decided, identical with section 5426, Revised Statutes 1909, of this State. It was contended that this section applied solely to common law actions. The court denied this and, after setting out the section mentioned (l. c. 475, 476), said:

''Had this woman survived her injuries, it is not claimed but that she could have maintained an action and recovered damages if her case was made out in other respects. Yet *this is the only test* for the determination of the question of survivorship of the action after her death. There is nothing in this section pointing in the least to the idea that it is to be restricted to causes of action existing at common law only. . . . The effect of the highway statute was to make towns liable for negligence as to highways and in respect to travelers the same as other corporations and individuals were liable for negligence at the common law. Towns having been brought into this

line, we think they became subject to the provisions of the survivorship statutes the same as though they had been in it by force of the common law. The reasons are apparent why the Legislature should have provided as to the nature or character of the damages, in case the injured person died, it having provided that the liability should continue.''

In the case of Vickers v. Cloud County, 59 Kan. 1. c. 88, the Supreme Court of Kansas in considering a case brought under the general survival act of that State to recover for the death of one who, if he had lived, would have had a cause of action under a statute passed after the former, said:

''According to the allegations of the petition and the offer of proof thereunder, the fall of the bridge and the resulting injury and death of Vickers were due to the wrongful acts and omissions of the defendants. The widow is, therefore, entitled to maintain an action against them and to recover for the death of her husband, providing he could have maintained an action against them for the injury if he had lived. [Civil Code, sec. 422.] This code provision is remedial and prospective, and is as applicable to statutory liabilities created after its enactment as to those created or existing before that time.''

It will thus be seen that in the cases in which the question was directly presented and in which the courts dealt with it there is apparently no conflict in the authorities on the subject, all holding that it matters not when the statute is passed which gives an injured person a right of action, in case of his death that cause of action is transmitted under general provisions, like ours, for the survival of actions.

The name of the cases which assume this to be the law is legion and their very number precludes their citation here.

The first proposition must consequently be held bad for the reasons given in the cases from which we

have quoted and from the very nature and wording of section 5426, Revised Statutes 1909. No further comment seems necessary on this phase of the case, particularly in view of the fact that in the opinion really determinative of the Strottman case, Judge Woodson recognizes the force of these decisions in ordinary cases but distinguishes them by reason of the effect of the decision in the case of Proctor v. Railroad, 64 Mo. 112. This phase of the matter falls within the scope of the second proposition as set out above.

(b). Upon the second proposition (supra) the decision in the Strottman case is really grounded.

In the opinion written by Judge Burgess it was said (211 Mo. l. c. 254) discussing section 2865, Revised Statutes 1899 (now section 5426, Revised Statutes 1909):

"We are unable to agree that this section has. the effect of transmitting a right of action created by section one of the Act of 1897, as it has been ruled by this court that that section does not include a claim for damages for injuries occasioned by the negligence of a fellow-servant. . . . It will be presumed that the Legislature, at the time of the passage of the Act of 1897, was familiar with the decisions of the Supreme Court, which hold that, under section 2865 supra, the master cannot be held for injuries received by one servant through the negligence and *unskillfulness* of his fellow-servant. Had the Legislature desired to transmit a right of action to the representative of the deceased employee, it could have done so by proper and necessary legislation."

In his concurring opinion, Judge Woodson states the proposition more clearly (l. c. 269, 270) as follows:

"But it has been the universal ruling of this court ever since the decision in the case of Proctor v. Railroad, supra, was handed down, that section 2865 has

no application to and did not transmit a cause of action from a servant who was killed by the negligent acts of a fellow-servant to his wife and children, for the obvious reason that he had no cause of action against the master to be transmitted.

"The mere fact that the Legislature in 1897 created a cause of action in favor of the servant, against the master, for injuries received in consequence of the negligence of a fellow-servant, is no warrant or justification for this court to write into that section of the statute a survival of that cause of action and a transmission of it to the widow upon the death of the husband when the Legislature has failed to do so.

"If, at the time of the enactment of section 2865, the Legislature had in express terms provided that it should not apply to fellow-servants, then, I apprehend that it would not now be contended that such section would transmit a cause of action created by the Act of 1897 to the widow of the injured servant, yet that is just what this court has uniformly held the Legislature meant by the passage of that statute. [Proctor v. Railroad, supra.]"

Manifestly this is the only ground upon which the conclusion reached can be sustained. Differently stated, the position taken was that the effect of the decisions in the case of Proctor v. Railroad, 64 Mo. 112,. and like cases, was equivalent to the insertion in sections 2864 and 2865, Revised Statutes 1899, of an express provision that those sections should never apply to actions for death resulting from injuries caused by the negligence of a fellow-servant. If that was the effect of those decisions the conclusion was correct. Otherwise it was not.

The decision of the Supreme Court of Wisconsin in the case of Ean v. Railroad, supra, as the quotation given therefrom discloses, is directly in point and in direct conflict with the proposition now under dis-

cussion. A like observation is substantially true of
the cases of Merkle v. Bennington, supra, Racho v.
Detroit, supra, Eames v. Brattleboro, supra, and Vickers v. Cloud. County, supra.

In 1857 (Laws Wis., sec. 1, ch. 71) Lord Campbell's Act was substantially re-enacted in Wisconsin
(Sec. 4255, R. S. Wis. 1878), the form of the first
section of the statute adopted in that State being
word for word like section 5426, Revised Statutes
1909 (2865, R. S. 1899), except the addition of a proviso as to the place of the injury and the courts in
which the actions should be brought. In 1875 (Laws
of 1875, p. 293) an act was passed by the Legislature
of Wisconsin abrogating the fellow-servant rule so far
as it applied to the employees of "railroad corporations."

This act contained no provision as to the survival
of the cause of action created by it and was in that
respect as is the Act of 1897.

In 1879, William Gumz, while in the employment
of a railway company died from injuries inflicted by
reason of the negligence of a fellow-servant, and his
executrix sued for the benefit of the widow, as the
general law (Sec. 4256, R. S. Wis. 1878) provided
she might. In this case (52 Wis. l. c. 676) the Supreme Court of Wisconsin said:

"By section 1816, Revised Statutes, every railroad corporation is made liable for all damages sustained by any agent or servant thereof, by reason of
the negligence of any other agent or servant thereof,
without contributory negligence on his part, when sustained within this State. *In case the injury causes
death, such right of action is preserved,* by sections
4255-6, R. S., to the personal representative of such
deceased person."

In previous decisions of that court (Cooper,
Admr. v. Railroad, 23 Wis. 668; Moseley v. Chamberlain, 18 Wis. 700), it had been held, prior to the enact-

ment of the Wisconsin fellow-servant act and subsequent to the passage in that State of sections 4255-6, supra, that no recovery could be had for the death of a railroad employee caused by the negligence of a fellow-servant. Thus it will be seen that the case of Gumz v. Railroad, supra, was decided under the exact conditions, so far as statutory provisions and previous decisions of the Wisconsin Supreme Court were concerned, which existed in this State when the Strottman case was decided.

In the principal opinion in the Strottman case (l. c. 254) the impression is left that the Gumz case was decided upon a statute unlike ours. The fact is just the contrary, since the general survival statute (Sec. 4255, R. S. Wis. 1878) is identical in every word (except as to place of injury and courts having jurisdiction) with section 5426, Revised Statutes 1909, and the fellow-servant section (Sec. 1816, R. S. Wis. 1878) provides simply for liability for damages "sustained by any agent or servant" of a railroad corporation "by reason of the negligence of any other agent or servant thereof," then prescribing the circumstances under which such injured employee can recover and forbidding contracts of exemption.

As early as 1851 (Iowa Code, 1860, section 2501) there existed in Iowa a statutory provision to the effect that "when a wrongful act produces death, the perpetrator is civilly liable for the injury."

In 1862 the Legislature of that State enacted (Laws of Iowa, 1860, Extr. Sess. 1862, p. 198, sec. 7) the following:

"Every railroad company shall be liable for all damages sustained by any person, including employees of the company, in consequence of any neglect of the agents or by any mismanagement of the engineers, or other employees of the corporation, to any person sustaining such damage."

In 1871, the Supreme Court of Iowa (Philo v.

Railroad, 33 Iowa, 47), in considering an appeal from a judgment recovered against a railroad by the executrix of William Philo, who died from injuries received by reason of the negligence of a fellow-servant, held the judgment was right despite the fact that the fellow-servant act of the State made no express provision for the survival of the action.

Since the court employed in part argument already presented, it need not be repeated. Suffice it to say that the decision is another in line with the conclusion reached in the cases to which reference is made.

In a case arising under the laws of Kansas, in which State the provision of the general statute as to survival was the same as that of Iowa (supra) the rule announced in the Philo case was applied in an action for death caused by the negligence of a fellow-servant. [Larussi v. Railroad, 155 Fed. 654 et seq.; Ibid., 161 Fed. 66.]

In view of the number and forcefulness of the decisions announcing a different conclusion, as well as the great respect due the courts from which they emanated, it seems proper to consider again the effect given the case of Proctor v. Railroad, and like cases, by this court in the decision in the Strottman case.

An examination of the opinion of this court in the case of Proctor v. Railroad, 64 Mo. 112, discloses that the decision in that case was really put upon the ground that no action could be transmitted because, at the time the injury occurred from which Proctor died, Proctor himself would have had no cause of action had he lived. The court in discussing what is now section 5426, Revised Statutes 1909 (Section 2865, R. S. 1899), said, l. c. 119:

"It is conceded by all that the third section of the act was only designed to transmit a right of action, which but for the section would have ceased to exist, or would have died with the person; in other

words, that under section three *whenever a person dies from such wrongful act of another as would have entitled the party to sue had he lived*, such cause of action may be maintained by certain representatives of the deceased, notwithstanding the death of the party receiving the injury. It creates no new cause of action but simply continues or transmits the right to sue, which the party whose death is occasioned would have had, had he lived."

The effect of the decision was simply that since no right of action would have accrued in favor of Proctor had he lived, none could be transmitted on his death. The court correctly qualified the general language of section two of the act (Sec. 2864, R. S. 1899) so as to bring it into harmony with the explicit language of section three and denied the right to recover upon the same ground upon which it would have denied a recovery under the third section for the death of any person who could not have sued had he lived.

The court (l. c. 122) said:

"Restricting the meaning of the words 'any person,' and making them apply only to such persons *as are included in section three,* accomplishes this result and relieves the whole question of all difficulty, and makes sections two and three harmonious in intent."

It is true that the court (l. c. 126) said that the Legislature "did not intend to include, under the term 'any person,' a fellow-servant injured by the negligence of a fellow-servant, without fault of the master," but the reason given, as the opinion clearly shows, was that such injured person would have had no cause of action had he lived and, therefore, had none to be transmitted by the sections under consideration. That case adopted the reasoning of the court in Connor v. Railroad, 59 Mo. 285, and that reasoning is of the same character, so far as concerns the matter in question here, as that in the case which adopts it.

In the case of Elliott v. Railroad, 67 Mo. 1. c. 274, the court expressly adhered to the doctrine of the Proctor case (1. c. 273) and declared:

"The suit can only be maintained when the deceased, if he had lived, could have recovered damages for his injury, and the same evidence as to the cause of the injury is required in a suit by his representative, that would have been required had he survived and sued for the injury."

In Miller v. Railroad, 109 Mo. 1. c. 360, 361 (1891), this court said:

"The construction given to the statute by the Proctor case is still the rule of this court. There is not a thing in that case, or in the prior cases, which gives any countenance to the proposition that, in case of the death of an employee, the action must always be under the third section.

"The Proctor case refutes any such claim; for it proceeds upon the principle that the second and third sections were not intended to create an entirely new liability, but were designed to continue or·transmit the right to sue, which the injured party would have had had he lived."

In the same case (1. c. 360) it is said that the sole question decided in the Proctor case, as stated by the court in the opinion at the time, was: "Whether, under the words 'any persons,' in said section, a fellow-servant, whose death is occasioned by the negligence of a fellow-servant, without fault of the master, is or was intended to be included." And, also, "The court first refers to the rule of law which exempts the master from liability where one servant is injured by the negligence of a fellow-servant, and the conclusion is then reached that it was not the design of the statute to abolish that rule, even as to cases mentioned in the first clause of the section," etc.

This court has frequently cited the Proctor case (Gibbs v. Hannibal, 82 Mo. 1. c. 148; Hennessey v.

Brewing Co., 145 Mo. l. c. 112; Strode v. Transit Co., 197 Mo. l. c. 625, and cases cited; Millar v. Transit Co., 216 Mo. l. c. 105; Gilkeson v. Railroad, 222 Mo. l. c. 182) and in no instance has the construction given it been like that in the Strottman case. In, fact, twice before this last mentioned decision and once after (Penney v. Stock Yards Co., 212 Mo. 309) judgments were affirmed, which must have been reversed had the last mentioned construction of the Proctor case been applied.

The principle announced in the Proctor case, as appears from the case itself, and as also appears from the later cases discussing and applying it, was simply that the third section of the damage act transmitted a cause of action only in case the decedent, had he lived, would himself have had a right to recover for his injuries, that in the general language of the second section the meaning of the words "any person" should be limited so as to bring that section into harmony with the third section in accordance with the legislative intent; that when this was done no right of action would be transmitted by either the second or third section unless the decedent could himself have sued and since no right of action would have accrued (under the law as it then was) to Proctor had he lived, no recovery for his death under either section could be had. The importance of the fellow-servant rule in that case arose simply from the fact that it was the thing which negatived Proctor's right to sue, had he lived.

It was true (prior to 1897), as said in the last quotation given above from the Strottman case ,(211 Mo. l. c. 269) that it had been "the universal holding of this court ever since the decision in the case of Proctor v. Railroad, supra, was handed down, that section 2865 (1899) has no application to and did not transmit a cause of action from a servant who was killed by the negligent acts of a fellow-servant, *for the obvious*

*reason that he had no cause of action to be transmitted.*"

And that was the reason, and the obvious reason, and no other was given or was possible.

It seems to us that a decision which merely announces the rule that a statute does not transmit a cause of action because there was no cause of action to be transmitted, is not at all interpretable as holding that that statute *prohibited* the transmission of a cause of action which thereafter came into existence; nor is a holding that the statute does not *create* a new cause of action after death (because none would have existed had there been no death) equivalent to one that the same statute would not *transmit* a cause of action when the Legislature has removed the only obstacle in the way of such transmission.

None has contended that section 5426, Revised Statutes 1909 (2865, R. S. 1899) had in it any express prohibition against survival in any case, and the effect of the decision in the Proctor case was only that section 2864, Revised Statutes 1899, should be construed to mean what the language of the following section clearly meant and what this court has always said it meant and means, i. e., that no cause of action was transmitted by it unless the decedent would have had a cause of action had he lived.

The Proctor case interpreted the general language of the second section (2864, R. S. 1899) to mean what the third section (2865, R. S. 1899; 5426, R. S. 1909) meant and not to mean something different. The fact that then the second section was interpreted to mean that it did not *create* a new cause of action after death when the decedent would have had none had he lived does not support the contention that either section would not transmit a cause of action if decedent would have had one had he lived.

The test of this is to assume that Proctor would have had a cause of action had he lived and read the

case in the light of that assumption. Undoubtedly, none of the reasoning of the court can be said to indicate that under circumstances of that kind the case would have resulted as it did. The court does not decide that there was anything in either section denying a cause of action to Proctor but simply decides that there is nothing in either section transmitting a cause of action in any case in which the decedent would have had none had he lived.

The Act of 1897 would have given Proctor a cause of action had his injury occurred after its passage and the condition, for the lack of which his widow was denied the right to recover, would have been present. And it was solely for the absence of this condition precedent that her right to recover was denied.

Certainly the argument in the principal opinion (211 Mo. l. c. 257), based upon the fact that the Act of 1897 does not itself expressly confer "a right of action in case of the death of the employee, but by the first section a right of action is created in favor of the party injured and no other" had nothing to do with the question whether under those very circumstances a right of action was transmitted by a separate and independent general statute of survival.

There is no strength in the argument based upon the usual presumption that the Legislature knew the existing law in 1897 and was familiar with the decision in the Proctor case and like cases. If the Proctor case had the effect ascribed to it in the Strottman case, then that argument would be sound. If it did not have that effect, the Legislature could not have acted with any such interpretation of that case in mind. Since the real question in the Strottman case was whether or not the Proctor case did have that effect, it was begging the question to assume that the Legislature acted with a like assumption in mind and then proffer that action as proof that the first assumption was correct.

The argument as to the effect of the amendment in 1905 is sufficiently answered in the dissenting opinion. Besides the Legislature cannot amend a statute by inference from acts subsequently passed. Such inferences are valuable only when the language of the prior act is ambiguous.

Nor does the fact that the Legislature amended the Act of May 10, 1907 (the "Mining Fellow-Servant Law"), by adding an express provision for survival thereto, affect the question in the case now before this court since that amendment was doubtless made to counteract the decision in the Strottman case. The promptness with which it was passed indicated, if any thing, that the Legislature may have entertained an opinion at variance with that announced in the case mentioned.

What has been said disposes of the only errors assigned, and for the reasons given we have not found it possible to reach a conclusion other than that the case of Strottman v. Railroad on the point discussed should not be followed and that the judgment in this case should be affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted by the Court in Banc as its opinion. *Valliant, C. J., Lamm, Ferriss, Kennish* and *Brown, JJ.,* concur; *Woodson, J.,* concurs in separate opinion to be filed in five days; *Graves, J.,* dissents.

Concurring opinion of *Woodson, J.,* not yet filed.