Alice RINGWALD, d/b/a Pine Crest
Nursing Home, Appellant,

v.

The DIVISION OF HEALTH of Missouri,
and Herbert R. Domke, M.D., Director of
the Division of Health of Missouri, Re-
spondents.

No. 58971.

Supreme Court of Missouri,
En Banc.

May 5, 1976.
Modified on Court's Own Motion.
Rehearing Denied June 14, 1976.

Brian J. Fahey and George J. Bagot, Clayton, for appellant.

John C. Danforth, Atty. Gen. by Louren Wood, Jefferson City, for respondents.

SEILER, Chief Justice.

The Missouri Division of Health revoked appellant's practical nursing home license under Chapter 198, RSMo 1969,[1] and, after the revocation was affirmed on review in the circuit court of St. Louis county, plaintiff nursing home appealed to the Missouri court of appeals, St. Louis district. After opinion by the court of appeals and on application to this court by the respondents, the appeal was transferred here. Art. V, § 10, Mo.Const. 1945, as amended.

In No. 59,124, *Friedman v. Division of Health*, 537 S.W.2d 547, also decided this date, we held that the division, in considering the revocation of a practical nursing home license was not limited to a considera-

tion of the licensee's compliance or noncompliance with the rules and regulations during the current license year and that the license in question is a continuing, not annual, one. The present case involves a further variation on the question of what evidence the division can consider in a revocation hearing—specifically, as to testimony taken in an earlier hearing (the 1968 hearing) which ended without any findings being made or order being issued, followed by several annual renewals of the license, followed by a later hearing (the 1971 hearing) where the division did find a large number of major noncompliances occurring in 1971 and ordered the license revoked, the earlier transcript being introduced into evidence and considered both by the division and by the circuit court on judicial review.

Appellant is the owner of a licensed practical nursing home. In July 1971, the division gave notice to appellant of an administrative hearing to determine whether appellant's license should be revoked or suspended. The notice contained a listing of thirty allegations of "major noncompliances" and stated the listed noncompliances were observed on July 23, 24, and 25, 1971.[2] The notice further stated that the division would again inspect the home within ten days prior to the administrative hearing on August 27, 1971.

On August 23 or 24, 1971, a further inspection was made at appellant's nursing home and testimony concerning that inspection was admitted without objection at the administrative hearing. Some of this testimony concerned noncompliances which were not contained in the July 1971 notice.

Earlier, in September 1968, the division had conducted an administrative hearing to determine whether appellant's license should be revoked or suspended. Following that hearing, in which, so far as the record here before us shows, no findings were

---

1. All statutory references are to RSMo 1969.

2. The last two dates fell on Saturday and Sunday. One writer has pointed out that inspections should occur not just during the weekdays and after advance notice (when many violations are likely to go undiscovered), but also at nights and on weekends when staff shortages are usually the worst. Brown, *An Appraisal of the Nursing Home Enforcement Process, Symposium—Law and the Aged,* 17 Ariz.L.Rev. 304, 328 (1975).

made or orders issued, appellant's 1968 license was not revoked or suspended and appellant's license apparently was renewed in 1969, 1970 and 1971. The transcript of the 1968 hearing was admitted in evidence by the division at the 1971 hearing over the objection of appellant that such evidence was incompetent, irrelevant, and immaterial to the issues involved in the instant hearing and too remote in time. The transcript of the 1968 hearing consisted of 131 pages of testimony concerning alleged conditions at the nursing home prior to September 3, 1968, the date of that hearing.

Following the August 1971 hearing, the division issued a letter to appellant in which it listed twenty-three findings denominated major noncompliances and revoked appellant's license. All incidents of noncompliance named had taken place in 1971, not 1968.

Appellant petitioned the circuit court for judicial review pursuant to §§ 198.140 and 536.100 to 536.140. Among the circuit court's conclusions of law was that "the revocation of the license is supported by competent and substantial evidence upon the whole record, including the transcript of the September 1968 administrative hearing." The circuit court's judgment affirmed the license revocation and the appeal followed.

■ Appellant contends the 1968 transcript was hearsay but no such objection was made during the administrative hearing, nor on review in circuit court, nor in the court of appeals, and therefore will not be entertained here.

Appellant also contends it was prejudicial error to admit into evidence the transcript of the 1968 administrative hearing on the grounds that it contained testimony which was irrelevant and immaterial to the issues before the agency on August 27, 1971, and too remote in time to have probative value as to conditions existing at appellant's nursing home in 1971.

■ There is no question but what the nursing home licensure law contemplates a continuing surveillance of nursing homes in order to effect the ends stated. Section 198.062 requires a home to be open at all reasonable times for inspection. The division is given substantial latitude and flexibility in carrying out its supervisory functions. It is not required to revoke a license upon a finding of noncompliance. The division may suspend a license or refuse to renew pending corrective measures by the licensee and this may or may not involve the actual closing of the home.[3] And, of course, the division could conduct additional inspections to determine if the suspended licensee has come into compliance with the law and regulations before removing the suspension or proceeding to renew the license.

There was a good deal of testimony from the inspectors in the 1968 hearing about particular instances of failure to abide by the rules and regulations; for example: instructions from the doctors as to medication to be given were not followed; there was one instance where a prescription had not been filled as often as would have been necessary had the patient been receiving the medication as ordered by the doctor; nurses' notes were not kept current; the patients' charts were not complete; annual physicals were not recorded; weights were not recorded monthly; thermometers were not disinfected properly; catheters were not cleaned before storage; bed patients were not positioned properly so as to avoid foot drop; precautions were not taken to minimize hand contracture or to prevent fingernails from growing into the palm; the home was short on nurse's aide personnel; the diet was inadequate as to protein; diabetic patients were not fed in accordance with the doctor's orders; menus were not prepared and posted in advance. Some of these deficiencies were not disputed by the operator, others were. But there were indications the home was improving. One of

3. As respondent points out, closing during suspension is not a practical concept in nursing home licensing because aged and infirm residents of such homes cannot be moved today and brought back tomorrow.

the inspectors so testified and corrective discussions had been held with the operator about the shortcomings. The operator, Mrs. Ringwald, insisted that she was trying to correct the deficiencies, that she was checking to see that the charts and records were being caught up and was following through personally to see that the doctors' orders were carried out; that she now had sufficient personnel. A doctor who took care of twenty-four of the patients testified that while he was not familiar with the rules and regulations of the division pertaining to nursing homes, he did not see any patients in the home who appeared to have nutritional deficiencies or be the victim of nursing home neglect.

■ It is apparent the division did not deem it necessary to take action following the 1968 hearing, even though it is difficult to believe, after reading the testimony, that the nursing home was in full compliance with the rules and regulations. Section 198.140 is the section which deals with revocation or refusal to renew a license. Under it the division is authorized to act where it finds there has been "a substantial failure to comply with the requirements." As stated, in this instance, the division made no determination on the basis of the 1968 hearing. Had it done so it would have been required to specify its findings of fact and conclusions of law and provide the operator with a copy. Its silence and failure to act is equivocal and is as consistent with a conclusion that there were certain deficiencies, but that the operator was striving to remedy the defects and the home was improving, as that there were no deficiencies and the nursing home was up to requirements in every respect. Under the facts, therefore, we do not believe that the subsequent renewal of the license in the years 1969, 1970 and 1971 can be regarded as constituting either express or tacit approval of the operation as observed in 1968, nor could the operator reasonably so have regarded it. Appellant was bound to have realized that her operation was under scrutiny and that improvement was required, which she insisted she was making.

So viewed we see no particular defect in the division including in the hearing held in 1971, the transcript of the testimony taken in the 1968 hearing. The 1968 transcript was not offered until the close of the division's case. By that time there was substantial evidence in the record that many of the shortcomings reported by the inspectors in the 1968 hearing were continuing to be repeated in 1971 and that the anticipated or promised improvement referred to in 1968 had not materialized or had at best been short-lived.

We know that following the 1971 hearing the director found twenty-three major noncompliances, all occurring in the year 1971. Many of these were the same type testified to in the 1968 hearing and as to which corrections and improvements were then said by the operator to be underway. For instance, in 1971 the director found insufficient number of qualified helpers, lack of required staff, medical records deficient, absence of required medications. As stated, similar conditions had been observed in 1968. In addition, in 1971 the director also found numerous instances of patient neglect, examples of patients whose care requirements were beyond the ability of the staff involved, many instances of filth in beds, linens, equipment, and rooms, inadequate fire prevention measures, housing of non-ambulatory patients other than on the ground floor and failure to have at least one attendant on duty at all times in the various separate structures where patients were housed. Interestingly, the operator again contended that she was making improvements, that many of the 1971 defects had been corrected and the implication was she was confident if permitted to continue she could bring the nursing home into compliance.

■ The division is not restricted to evidence of current noncompliances when it is considering the appropriate remedy—revocation, suspension, or other remedial orders. *Friedman v. Division of Health,* supra. In order for the division to carry out its supervisory function, it must be allowed to consider the established relevant past

conduct of the licensee shown by its records and admitted into evidence when deciding upon what sanction should be imposed consequent to a finding of current noncompliances. We therefore hold there was no error under the record before us in admitting the 1968 transcript in the instant case.

Appellant further suggests that there is no evidentiary support for the findings of the division because the record does not reflect the type of nursing home license issued to appellant and, therefore, one cannot know what is "adequate" or "required" as those terms are used in the findings with respect to appellant's nursing home.

There are three types of nursing homes mentioned in § 198.072—professional, practical, and domiciliary, and the statute requires the division to prescribe and publish minimum standards for each type of home.

Appellant, in her brief in the court of appeals, admits that she is the "owner and operator of a *practical licensed* nursing home in St. Louis County . . ." (emphasis added). The regulations, standards, and specific requirements for that classification of nursing home are set forth as part II of the division's publication and are not matters of speculation and conjecture. The point is overruled.

Appellant contends that she was deprived of her constitutional right to due process of law under Amendment Fourteen of the U.S. Constitution, and Art. I, § 10, Mo.Const. 1945, in that some of the findings against her were matters which were not set forth in the July 27, 1971, notice to appellant. It is true that findings ten, and sixteen through twenty-three, related to matters not set forth in the July notice. However, there was no objection to the evidence introduced at the hearing as to those matters, and appellant cross-examined and introduced testimony to refute them. Appellant's petition for review did not complain of the failure to include the

particular items in the notice, nor of the admission of evidence relating thereto, nor of the findings having been made without prior specification thereof in a notice.[4]

There is no question that a licensee is entitled to receive notice of the reasons for the proposed revocation. Section 198.140. In this case, the original notice did not contain some of the alleged noncompliances found on the August 23 or 24, 1971 inspection and about which evidence was received. The licensee had the right to object to evidence not within the scope of the notice. She also had the right not to object to the evidence and meet the issues raised at that hearing. In this case, the appellant chose the latter course and will not be heard to complain of that matter on appeal. The point is overruled.

The judgment is affirmed.

All of the Judges concur.

---

4. There was no evidence offered at the circuit court hearing except with reference to a stay order. Neither the memorandum filed by plaintiff in circuit court in support of her petition for review nor her brief in the court of appeals make any complaint that the findings which were based upon the August 23 or 24, 1971, inspection were not included as charges in a notice.