Leona **THOMPSON**, Appellant,

v.

**DIVISION OF HEALTH OF MISSOURI**, Respondent.

No. **WD 30783.**

Missouri Court of Appeals, Western District.

Sept. 2, 1980.

William H. Pickett & Paul L. Redfearn III, of William H. Pickett, P. C., Kansas City, for appellant.

James C. Martin of Dept. of Social Services, Jefferson City, for respondent.

Before TURNAGE, P. J., and SHANGLER and MANFORD, JJ.

MANFORD, Judge.

This is an appeal from an administrative order suspending a nursing home license. The circuit court entered judgment affirming the suspension order. The judgment is reversed with directions.

Appellant alleges three errors. Disposition of this appeal turns upon the third error so presented. Only brief reference to the first two points is required as they are found to be without merit. In summary, appellant alleges (1) that the circuit court erred in affirming the suspension order because the hearing examiner was without jurisdiction to conduct the hearing; (2) that the circuit court erred in affirming the suspension because appellant was deprived of adequate notice and opportunity to be heard, which was in violation of the state and federal constitutional safeguards for due process; and (3) that the evidence was not competent and substantial upon the whole record to support the finding and order of suspension, and the entry of said order was an abuse of discretion.

Review of this matter is of the record of the administrative agency and not of the circuit court, see *Ingram v. Civil Service Commission*, 584 S.W.2d 633 (Mo. App.1979). Neither the circuit court nor this court can substitute its judgment for that of the administrative agency. Review is limited to the determination of whether or not the agency, in the instant case the Division of Health, had the authority to act in the manner in which it did, and secondly, whether or not the finding and order of the agency was supported by competent and substantial evidence.

Appellant, for her first alleged error, contends that the hearing of this mat-

ter should have been before the Administrative Hearing Commission pursuant to § 161.272, RSMo 1978. To the contrary, the hearing was heard and acted upon by the hearing examiner of the respondent agency. Appellant's point must fail for the record clearly shows these proceedings commenced on June 23, 1978 pursuant to a Notice of Hearing served on appellant by respondent. The commencement of these proceedings was conducted according to § 198.140, RSMo 1969, which provides authority for respondent.

In 1978, the Missouri legislature enacted § 161.272, to be effective August 13, 1978. This legislative charge carried a proviso clause which disposes of appellant's argument. It reads, "Section A . . . This act shall become effective August 13, 1978. Any hearing or review commenced prior to such date shall proceed pursuant to the law applicable at the time of its commencement." [1]

The record herein reveals the actual hearing commenced August 4, 1978, thus rendering § 198.140 applicable. § 198.140 was the expressed statutory authority for respondent agency to initiate these proceedings, the agency deriving its authority from the statutory enactment of the legislature.

Point one, for the reasons set forth herein, is found to be without merit and is ruled against appellant.

The second alleged error sounds upon denial of constitutional due process. The record, on its face, dispels appellant's argument in that appellant was provided a list of alleged violations, was afforded opportunity to and did cross–examine witnesses, and presented her own evidence. Appellant alleges, and on the face thereof her allegation appears quite serious, that she was given only one hour notice of alleged violations prior to the hearing. However, appellant was given notice as early as June 23, 1978, a hearing was scheduled for July 28, 1978 and by mutual consent of the parties, the hearing was rescheduled for October 5, 1978. Appellant was afforded procedural due process under both federal and state authority in that adequate notice had been given, along with the opportunity to be heard. See *Valter v. Orchard Farm School Dist.*, 541 S.W.2d 550 (Mo.1976) and *Ahern v. Board of Education of School District of Grand Island*, 456 F.2d 399 (8th Cir. 1972).

Point two, for the reasons set forth herein, is found to be without merit and is ruled against appellant.

In addressing appellant's final point, a review of the pertinent facts must first be made to determine whether or not the administrative order was supported by competent and substantial evidence. As has been resolved above, authority to initiate the proceedings is found in § 198.140.

Appellant was a lessee of the property which houses her nursing home operation. Appellant is an "operator" within the nursing home law, see *Friedman v. Division of Health*, 537 S.W.2d 547 (Mo. banc 1976). The issue of appellant as "lessee" was presented for two purposes: first, the fact that appellant purchased the property just a short time prior to these proceedings was elicited to show that many of the violations could not be corrected by appellant as lessee; and second, that after appellant purchased the property, she in fact corrected many of the specific violations.

Appellant was notified, by letter, of 28 deficiencies related to patient care and dietary services. This was the result of an inspection of June 1, 1978. The notice letter advised appellant of a license revocation hearing for July 28, 1978. The July date was later changed to August 8, 1978. The letter afforded appellant notice of charged deficiencies in dietary service, patient care, fire safety and sanitation, all of which existed since August 23, 1965. At the August 8, 1978 hearing, two witnesses for respondent agency, both inspectors, testified that a 45–day delay would not be detrimental to the patients of the facility and that the 45–day delay would be ample time to correct the deficiencies.

1. S.B. 661, Session Laws 1978.

The matter was continued to October 5, 1978, when a full hearing was held. At this hearing, it was stipulated that the dietary deficiencies had been corrected and were no longer a part of the hearing. The hearing was limited to deficiencies allegedly found during the June 1, 1978 inspection. All sanitation deficiencies had been corrected, except for one crusted urinal. The inspector for the agency testified that the vast majority of the deficiencies had been corrected, except in the areas of medical care, treatment and record keeping.

Subsequent to the August 8, 1978 date (on this date the matter was continued for 45 days), inspections were held on September 26 and 29, 1978. The main criticisms offered by the agency were (a) medical charting, (b) lack of employee health records (on four out of 20 employees) and (c) deficiency in staffing schedules. The agency's witness, who was also the inspecting party, testified that her major concern was the charting of medical distribution in pencil rather than pen, not administering medicines ordered by physicians and the giving of medicines which had not been ordered.

Appellant offered testimony by employees and a resident of the facility as to the general good quality of the care and service at the facility. Appellant advised the court of the improvements she had provided, introduced various receipts showing payment for the improvements and testified that she provided clothing and medications for patients unable to purchase such items. Appellant stated that she had been reprimanded for entering medical information in pencil, but could not go back and trace over the penciled entry with pen, so those records would have to stand. Appellant further testified she kept medical records locked but made them available for inspections. She said she had employee staffing schedules, but at the time of the inspection, the schedules were at her home because she was working on them. She testified that she had corrected the medical deficiencies and offered to show the inspector the records related to this matter, but the inspector declined by saying, "You will have your day in court" or words to that effect. Appellant stated she was personally seeing to these matters and that all the deficiencies would be corrected.

On November 28, 1978, almost seven weeks following the hearing, the hearing examiner entered his order, finding the allegations, relating to the quality of patient care as set forth under the notice of June 23, 1978, to be substantially true. The examiner found appellant's facility not to be in substantial compliance and suspended appellant's license. The suspension order, however, contained two provisos. First, the effective date of the suspension was to be January 22, 1979, some three months in the future from the October hearing date. Second, the order provided that if a letter from respondent agency verified the facility was in compliance, the suspension would be vacated.

The record fails to reveal that any inspection was held subsequent to the November 28, 1978 order. The record also fails to reveal that any further inspection was ordered. In fact, nothing happened in regard to further inspections or the order, and this was conceded by respondent on oral argument.

When this case was argued before this court, a question was asked as to why no inspection occurred subsequent to the November 28, 1978 order and prior to its projected effective date of January 22, 1979. No answer was provided. On oral argument, it was developed that appellant was issued a valid license for the year 1979–80. The expiration date for the license was April 26, and appellant received her license effective April 26, 1979 to April 26, 1980.

Appellant then applied for a license from April 26, 1980 to April 26, 1981 and pursuant to that, was informed that a reinspection would have to be completed prior to the issuance of the 1980–81 license. This court is without information as to whether that reinspection has ever occurred.

From the above facts, a serious question arises, that being whether or not the alleged deficiencies for the year 1978 can, in fact, be inspected, and whether or not any

such inspection would have any real meaning. The reason this is so is because of the lengthy lapse of time, the intervening reissuance of a valid license and a supposed inspection relative to the 1980–81 license.

■ It could be argued that the issue has become moot because of the intervention of time and the reissuance of a valid license, but regarding the inspections, there is no time limit upon them as they relate to deficiencies. Thus, in other words, the reissuance of an annual license does not prevent inquiry into past violations, see *Friedman v. Division of Health, supra.*

■ After review of the record and all documents herein, this court cannot conclude there was substantial and competent evidence to find that appellant's nursing home facility was not in compliance on January 22, 1979, the effective date of the examiner's order.

It is apparent from the record of this case that substantial compliance with listed deficiencies had occurred. There is no evidence to determine if total compliance had been reached by the January 22, 1979 order. Neither the inspectors nor the examiner considered the deficiencies of a grave nature. If the deficiencies had been so detrimental to the patient's welfare, why does the record reveal by testimony of the inspectors that a 45–day delay would not be detrimental to the patients? Further, if the deficiencies were of such a grave nature, why would a suspension order have been given an effective date some three months in the future?

The order of suspension was predicated upon the lack of quality of patient care. The effective date was January 22, 1979. There was no order or directive for a reinspection following the date the order was issued and its effective date thereof. It cannot follow there was, under the attending facts and circumstances of this case, competent and substantial evidence to support the order of the examiner. The only manner by which such order could have validity, by its effective date, was to have been supported by competent and substantial evidence. That evidence necessitated a reinspection between November 28, 1978 and January 22, 1979. No such evidence exists in this case and this court cannot determine whether in fact appellant was or was not in compliance on January 22, 1979.

■ This opinion neither addresses nor attempts to answer the current status of appellant's license. That question relates only to appellant's current application for relicensure. Past deficiencies, if not corrected, can be considered in regard to the current license issue, see *Friedman v. Division of Health, supra.*

As regards the issues in the instant case, this court finds there was no competent and substantial evidence to support the order of November 28, 1978. The judgment of the circuit court is reversed and the circuit court is directed to in turn order the respondent agency to vacate its order of suspension under date of November 28, 1978 for the reasons set forth herein.

All concur.

