**STATE of Missouri ex rel. Thomas F. EAGLETON, Attorney General, Respondent,**

v.

**Bonnie PATRICK, Appellant.**

No. 49828.

Supreme Court of Missouri,

Division No. 1.

Sept. 9, 1963.

Roswell Henderson, Moberly, for appellant.

Thomas F. Eagleton, Atty. Gen., Clyde Burch, Asst. Atty. Gen., Jefferson City, for respondent.

WELBORN, Commissioner.

The Attorney General of Missouri, as authorized by Sec. 198.160,[1] commenced this action in the Randolph County Circuit Court to enjoin appellant's alleged operation in Moberly of a nursing home, without a license, required to be issued, under Chapter 198, by the State Division of Health.

■ The circuit court issued a temporary restraining order upon the suit being filed and, upon submission of the cause, granted a permanent injunction. After motion for a new trial had been overruled, defendant appealed to this court. The State "in its own behalf" is a party to the action. State ex rel. Thrash v. Lamb, 237 Mo. 437, 141 S.W. 665. We have jurisdiction of the appeal. State ex rel. Collet v. Scopel, Mo.Sup., 316 S.W.2d 515.

Section 198.011 V.A.M.S., enacted in 1957 (Laws of Mo., 1957, p. 666), provides, in part, as follows:

"(1) The term 'nursing', 'convalescent' or 'boarding' home means a private home, institution, building, residence or other place, whether operated for profit or not, which provides, through its ownership or management, maintenance, personal care or nursing for three or more individuals not related to the operator, who by reason of illness, physical infirmities or advanced age are unable to care for themselves; or provides sheltered care to three or more individuals not related to the operator, which includes treatment or services which meet some need of the individual beyond the basic requirements for food, shelter and laundry. The term shall not include the following:" Certain exceptions follow, but

appellant does not claim the benefit of any of them.

The defendant contended in the trial court, and, as appellant here, that she was not engaged in an operation requiring a license under this statute.

According to the agreed statement of facts upon which the case was submitted, the appellant began operating her "home" at 1127 Henry Street, in Moberly, some time subsequent to the effective date of the 1957 licensing act, the exact date not appearing. Mrs. Patrick "held herself out to patients and relatives as being able to provide care". She inserted advertisements in the Moberly Monitor-Index, soliciting bed patients for her home.

Following the receipt of "numerous" complaints that appellant was operating an unlicensed nursing home, a licensed physician and a registered nurse representing the State Division of Health, went to the home at 10:00 A.M., December 15, 1961. The appellant was not present at that time, but an employee, who was a licensed practical nurse and who was "left in charge of the premises," admitted the inspectors without objection upon their identifying themselves.

At the time of the inspection, there were seventeen "patients" in the home. Five of the "patients" had been transferred from hospitals or licensed nursing homes and were under the care of their own licensed private physicians. Three of the "patients" had been adjudicated incompetent by the Probate Court of Randolph County. In the medical opinion of the Division of Health inspectors, five persons in the home required and needed "sheltered care, nursing care and medical supervision, above and beyond the basic requirements of food shelter and laundry."

The inspectors were in the home for approximately forty minutes. During their inspection they saw no personal service or nursing care rendered by anyone to the resi-

1. Section and chapter citations are RSMo 1959, V.A.M.S.

dents. At the time of the inspection, two wheel chairs, three commodes, five bedpans, three hospital beds, three sets of bedrails and two stocked medicine cabinets were being "utilized" on the premises.

Mrs. Patrick admitted she kept more than four persons who needed nursing care. She denied, however, that she provided any care, other than food, shelter and laundry, or treatment for them or any other patients. She served food at mealtime on cafeteria style trays. Food service was provided either at the bedside of the patient or in a chair, if the patient was sitting up. Mrs. Patrick did change and launder sheets and bed clothes in all rooms of the home.

According to the agreed statement, the position of the appellant was that she could keep as many patients as she wished who need care so long as she did not provide the needed care. In her brief in this court, she contends that the statute must be construed strictly in her favor and that the facts and circumstances enumerated in the agreed statement could bring her within the statutory definition only by a "strained interpretation" of Sec. 198.011.

 In construing Sec. 198.011, we reject appellant's contention that the section is to be strictly construed. The obvious purpose of this statute is to protect the health and safety of citizens who are unable fully to take care of themselves, particularly the more elderly persons, who, from necessity or choice, spend their later years in homes of the type which the statute would license and regulate. We know that the 1957 statute was enacted after a disastrous fire at a nursing home in Warrenton, in which more than 70 lives were lost. See Report of Joint Committee on the Warrenton Fire, Senate Journal, 69th General Assembly (1957), p. 1240. Such an enactment as this is a vital and most important exercise of the state's police power. City of Chicago v. Heffron, 346 Ill. App. 248, 104 N.E.2d 846. As such its construction, consistent with its terms, should be sufficiently liberal to permit ac-

complishment of the legislative objective. 3 Sutherland, Statutory Construction (3rd ed.), Sec. 7202, p. 397.

 In reviewing the evidence, we must keep in mind the requirement that the plaintiff, in an action such as this, must establish the violation of the statute and a right to an injunction by clear and convincing evidence. State ex rel. Taylor v. Anderson, 363 Mo. 884, 254 S.W.2d 609. However, the trial court could draw all reasonable and legitimate inferences from the evidence presented before it, and base ultimate findings upon such reasonable inferences. Howard v. Zweigart, Mo.Sup., 197 S.W. 46; Schanbacher v. Lucido Bros. Grocery Co., Mo.App., 93 S.W.2d 1076, 1081. Hogue v. Wurdack, Mo.App., 298 S.W.2d 492. We may do likewise upon our review here, reviewing, as we do in a case such as this, the matter on its merits, and, in view of the submission of the case on an agreed statement of facts, without the deference ordinarily in an equity appeal accorded the findings of the trial court. Berghorn v. Reorganized School Dist., 364 Mo. 121, 260 S.W.2d 573, 583(15).

Analysis of the statute shows that two separate operations are included within its definition of nursing, convalescent or boarding home. The first category includes institutions at which, through the ownership or management, there is provided maintenance, personal care or nursing, for three or more individuals not related to the operator, who, because of illness, physical infirmity or advanced age, are unable to care for themselves. The second category encompasses institutions which provide "sheltered care to three or more individuals not related to the operator, which includes treatment or services which meet some need of the individual beyond the basic requirements of food, shelter and laundry." Note that nothing is said as to the physical or mental capacity of the residents of institutions in this category.

A further classification of institutions covered by the law is found in Sec. 198.072,

which requires the Division of Health to publish minimum standards for homes, "distinguishing between the home which has professional nursing care, the home which has practical nursing care and the home which has only domiciliary or personal care."

Pursuant to this statute, the Division of Health has issued regulations for professional nursing homes, practical nursing homes and domiciliary homes. These regulations define the three types of homes as follows:

"PROFESSIONAL NURSING HOME —A facility in which all nursing care shall be under the general direction of a registered professional nurse who shall assume responsibility for all nursing care within the facility and who shall perform her duties under the general direction of persons licensed to practice medicine or surgery in the state of Missouri. A professional nursing home shall be so equipped and designed that it may accommodate convalescent or other persons who are not acutely ill and not in need of hospital care, but who do require skilled nursing care under the direction of licensed physician.

"PRACTICAL NURSING HOME—A facility equipped to render service to the residents as found in the above definition of a professional nursing home. Such services shall be rendered within the limits of the practical nurse law. The practical nursing home does not meet the professional requirements of the professional nursing home. It must, however, render care under the direction of a physician licensed to practice medicine and surgery in the State of Missouri. Such care shall meet the requirements of the manual and code.

"DOMICILIARY HOME—Any home which does not provide skilled nursing care. Such a home shall not be classified as a nursing home. Such a home shall be classified as a domiciliary home. It shall provide personal services only. The primary purpose of a domiciliary institution is to furnish food, shelter and other nonmedical

services. The operator of such an institution shall provide personal services to the residents which shall include assistance in normal daily activity, help with dressing, feeding, and supervision of medications. Bed patients shall not be admitted to nor maintained within a domiciliary home."

The agreed statement of facts contains no evidence that the appellant provided professional nursing services. The Attorney General would deduce that practical nursing services were furnished from the opinion of the inspectors and admission of the appellant regarding the need of five residents for nursing care and from the fact that the employee in charge at the time of the Division of Health inspection was a licensed practical nurse. However, even if this inference is permissible, we are confronted with the omission from the agreed statement of facts of any information as to why these individuals require nursing care. As above pointed out, the statute requires that they be persons unable to care for themselves by reason of illness, physical infirmity or advanced age. The agreed statement lists five persons who were transferred from hospitals or licensed nursing homes. However, except for the statement that these persons were under the care of their own physicians, there is nothing in the agreed statement regarding their age, physical condition or nature of the condition which required medical attention. Presumably, the condition might have been such as would not preclude the persons' caring for themselves. Nor is it clear from the stipulated facts that the five persons, found by the inspection team to need "sheltered care, nursing care and medical supervision" were the five persons transferred from hospitals and licensed nursing homes. In view of the failure of the agreed statement to provide facts essential for an operation within the first category under the statute, the injunction cannot be sustained under that portion of the statute.

However, the second category under the statutory definition does not present such problem. No reference is made in that

classification to the reason for the persons needing care. In the light of the statutory requirement that something more than the basic needs of food, shelter and laundry service be provided by an establishment to bring it within this category, it is obvious that the General Assembly was endeavoring, in this instance, to eliminate from the statute's application the well known and readily identifiable "boarding house", at which persons, wholly able to take care of themselves, live and take their meals. The legislature intended to cover establishments which provided these services, together with laundry, but also something in addition. The description in the regulation defining domiciliary homes sheds light on the type of additional service furnished in the institution which the legislature had in mind. The definition refers to "assistance in normal daily activity, help with dressing, feeding and supervision of medication." Certainly, in the light of the facts stipulated and the admissions of the appellant, the trial court could reasonably, and did, conclude, with which conclusion we agree, that appellant, in her operation of the home, must have provided, at the minimum, services of such nature. The appellant admitted that more than four of the residents needed nursing care, although she denied that she furnished it, that she told patients seeking admission and their relatives that she was able "to provide care", and that she, by newspaper advertising, solicited bed patients for the home. Any such operation would inevitably involve the providing of more than simply room and board. If that were all of the care furnished, there would have been no occasion for a licensed practical nurse to have been employed to supervise the operation of the home in the absence of the appellant. Nor would a simple boarding house operation have required the equipment found on the premises, including commodes, bedpans, hospital beds and bedrails. The trial court, in the light of the circumstances set out in the agreed statement, obviously did not accept the appellant's "strenuous" denial that she rendered any care above and beyond food, shelter and laundry. We agree with the trial court's rejection.

■ Appellant assigns as error the court's overruling of her motion to suppress evidence obtained in the inspection by the representatives of the Division of Health. The grounds stated for the motion were that the entry was illegal and that the officers entered the premises without a search warrant, although they had adequate opportunity to obtain a warrant.

The difficulty with appellant's motion, conceding that there might have been an illegal entry and search, which we in no manner infer to be the case and which question we do not reach at all, is that it is impossible to sift, from the agreed statement, the evidence obtained as a result of the inspection and which appellant would suppress. Assuming, and again without deciding in any respect, that the opinion evidence of the inspectors that five of the residents of the home needed sheltered, nursing and medical care might be subject to exclusion under appellant's motion, we have the appellant's admission that she kept more than four persons requiring nursing care. Compare State v. Smith, 357 Mo. 467, 209 S.W.2d 138.

The agreed statement does not disclose whether or not the presence of the equipment described in it was discovered as a result of the inspection. The statement merely states that "it is agreed that at the time of the inspection," the equipment was being utilized in the home. In view of the contents of the agreed statement, we find no error in the overruling of the motion to suppress. Contestible v. Brookshire, Mo. Sup., 355 S.W.2d 36, 44.

■ Appellant asserts that the judgment of the trial court should be reversed because the Division of Health, in establishing standards for the three classes of homes, required by Sec. 198.072, V.A.M.S., has established, in each category, different standards for homes operating at the time of the enactment of the 1957 act and for

# 260

those beginning operation thereafter. Appellant asserts that this results in six categories rather than three, as authorized.

We can find no basis for any standing on the part of appellant to raise this question in this proceeding. Appellant is not seeking a license under the act. According to the stipulation, she would apply for a license if she could do so under the pre-existing licensed practical nursing home classification. However, insofar as this action is concerned, the statute, not the regulation, is being applied. If appellant wishes to attack the regulation, proceedings are available for such purpose (Rule 87.02(c) ), but she may not do so here. "One who is required to take out a license will not be heard to complain, in advance of application, that there is danger of refusal. * * * He should apply and see what happens." Highland Farms Dairy, Inc. v. Agnew, 300 U.S. 608, 616, 57 S.Ct. 549, 553, 81 L.Ed. 83. See also Bourjois, Inc. v. Chapman, 301 U.S. 183, 188, 57 S.Ct. 691, 81 L.Ed. 1027. The stipulation does state that appellant would have been unable to meet the safety standards prescribed for pre-existing domiciliary homes. However, this is a matter to be determined by the Division of Health, not by the parties to this action and to the stipulation.

In the circuit court, the only pleading which appellant filed, other than the motion to suppress, was an answer, in the form of a general denial. The agreed statement of facts contains a stipulation that the defendant contended that Chapter 198 is unconstitutional. Her contention was that Sec. 198.101 operated as a special law in that it excludes from medical supervision homes which are operated for those who rely upon treatment by prayer or spiritual means, alone, in accordance with the creed or tenets of a well-recognized church or religious denomination. This objection was renewed in the motion for new trial and is presented by appellant in her brief in this court.

■■■ The rule has long been established, that, to preserve constitutional questions for review in this court, the constitutional issue must be raised in the trial court at the earliest opportunity, consistent with good pleading and orderly procedure. Only in exceptional circumstances, such as a case in which no prior pleading is required (Ivey v. Ayers, Mo.Sup., 301 S.W. 2d 790), may the objection be raised for the first time at the trial. By attempting to raise the question for the first time in the agreed stipulation, the appellant's standing is the same as if it had been raised for the first time at trial of the cause. She had ample opportunity to raise the objection by proper pleading, such as by a motion to dismiss (Harris v. Bates, 364 Mo. 1023, 270 S.W.2d 763), or even in her answer, which, however, took the form of a general denial and was thus insufficient to raise a constitutional objection. The constitutional objection, not having been timely raised, is not before us for review.

■■ In view of our conclusion that the evidence warranted the issuance of the injunction by the circuit court, and finding no basis for relief in any of the errors assigned, the judgment of the circuit court is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.