Sherman STIFFELMAN, et al.,
Plaintiffs-Appellants,

v.

Maurice ABRAMS, et al.,
Defendants-Respondents.

No. 63728.

Supreme Court of Missouri,
En Banc.

Aug. 16, 1983.

Rehearing Denied Sept. 20, 1983.

524

Tom Mendelson, University City, for plaintiffs-appellants.

Ronald Willenbrock, Stephen M. Glassman, St. Louis, for defendants-respondents.

SEILER, Senior Judge.

The question presented is whether the action before us—a suit by his executors for damages for personal injuries received by an elderly nursing home resident, Joseph A. Stiffelman, from blows and kicks from the nursing home attendants over a period of several weeks, eventually resulting in death—is authorized by certain sections of our Omnibus Nursing Home Act, §§ 198.-003–186 (hereinafter referred to as the Act).[1] We hold that it is and reverse the judgment entered in the trial court and remand the cause for further proceedings.

Plaintiffs appeal from the trial court order sustaining defendants' motion to dismiss for failure to state a claim upon which relief could be granted. Plaintiffs bring the action as executors of the estate of Mr. Stiffelman, a ninety-year old resident of the Evergreen Nursing Home and Rehabilitation Center, Inc., located in St. Louis County, Missouri.

Plaintiffs' dismissed petition alleges as the central occurrence severe injuries to Mr. Stiffelman caused from beatings inflicted upon him while a resident of the nursing home, culminating in his death several weeks later.

On a motion to dismiss for failure to state a claim for relief, we accept as true the facts properly pleaded, giving the averments a liberal construction, and making those reasonable inferences fairly deductible from the facts stated. *Concerned Parents v. Caruthersville School District,* 548 S.W.2d 554, 558 (Mo. banc 1977).

Count I of the two-count petition is brought under § 198.093.[2] Named as de-

---

1. Unless noted otherwise, all statutory references are to RSMo (Supp.1982).

2. Section 198.093 of the Act reads, in part: "1. Any resident or former resident who is deprived of any right created by sections 198.088 and 198.090, or the estate of a former resident so deprived, may file a written complaint within one hundred eighty days of the alleged deprivation or injury with the office of the attorney

fendants in Count I are Maurice Abrams as "operator" and "owner" of the Evergreen facility, plus six other individuals and a Missouri corporation as additional owners of the facility. These designations track the Act's conferring of a private remedy "against any owner, operator or the agent of any owner or operator" of a nursing home facility. Section 198.093.3. These terms are defined in the Act's definitions section. *See* § 198.006.(13) and (14).

The material allegations of Count I are that the Evergreen facility was at all pertinent times a proprietary nursing home operating under the Act as a "skilled nursing facility" pursuant to a license issued to defendant Maurice Abrams, as operator, by the Missouri Department of Social Services; that the decedent, Joseph Stiffelman, entered the Evergreen facility as a paying resident on May 17, 1979 "for the purpose of receiving nursing and health care of which he was then in need"; that he died on May 31, 1980, from "blows, kicks, kneeings, or bodily throwings intentionally, viciously, and murderously dealt him from among the facility's staff over a period of approximately two to three weeks prior to his death"; that the beatings "were repeated and were received by the decedent at ninety years of age and in a frail, defenseless, and dependent condition"; that the beatings so administered to the decedent were "physically and mentally tortuous; that he was caused by them to live out his final days in agony and terror; that his physical injuries included thirteen fractures to his ribs, subpleural hemorrhaging, and marked lesions to his chest, flanks, abdomen, legs, arms and hands; that during and following the period of the beatings the decedent lay at the facility for days unattended and unaided as to the deterioration and grave suffering he was undergoing."

Count I recites the provisions of the Act, found in § 198.088, declaring, *inter alia,* that every covered facility "shall insure" that each resident admitted "[i]s free from mental and physical abuse." § 198.088.-1(6)(g). Also quoted is pertinent language of the Act's private remedy provision, § 198.093, establishing a right of action for the deprivation of any right conferred by § 198.088. Plaintiffs allege that the injuries and death of decedent "were caused by the failure of defendant to fulfill their responsibilities of care and protection to him as imposed by the above quoted statutes and rules attendant to defendant's privilege of ownership and operation of a nursing home business", and that plaintiffs "should be entitled to an amount of $1,500,000 from defendants as survival damages for the great physical and mental pain and suffering endured by the decedent between the time of his beatings and his death" and "[a]s additional damages plaintiffs have incurred expenses for the burial of the decedent in the amount of $1,878.48 and for his final medical care in the amount of $2,206.00", for "total actual damages against defendants . . . in the sum of $1,504,084.48." Additionally, Count I seeks punitive damages in the sum of $3,000,000 "by reason of the intentional nature of the

general describing the facts surrounding the alleged deprivation . . ."

". . .

"3. If the attorney general fails to initiate a legal action within sixty days of receipt of the complaint, the complainant may, within two hundred forty days of filing the complaint with the attorney general, bring a civil action in an appropriate court against any owner, operator or the agent or any owner or operator to recover actual damages. The court may, in its discretion, award punitive damages which shall be limited to the larger of five hundred dollars or five times the amount of special damages, unless the deprivation complained of is the result of an intentional act or omission causing physical or emotional injury to the resident, and may award to the prevailing party attorney's fees based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary and proper; except that, an attorney who is paid in whole or part from public funds for his representation in any cause arising under this section shall not be awarded any attorney fees."

Section 198.088.1(6)(g) and (i) require the nursing home to insure that each resident "[i]s free from mental and physical abuse" and "[i]s treated with consideration, respect and full recognition of his dignity and individuality".

The term "abuse" is defined as "the infliction of physical, sexual, or emotional injury or harm." § 198.006(1).

physical and mental injuries inflicted upon the decedent." Attorney's fees are also requested in Count I based on the time reasonably expended in prosecution of the case.

Finally, Count I alleges the giving by plaintiffs to the Missouri attorney general of the notice required by § 198.093 and the attorney general's refrainment from official action, and, hence, by the fulfillment of those conditions, the vesting of the cause of action in plaintiffs.

Count II of the petition names the Evergreen corporation as sole defendant. This count alleges the making of a written contract of admission to the nursing facility between Evergreen and the decedent. A copy of the contract, titled "Admission Agreement and Contract for Health Care Services", dated May 17, 1979, is attached to the petition as an exhibit and incorporated into Count II. It is alleged in Count II that decedent's beatings, suffering, and death resulted from breaches of certain standards of care and personal rights expressly established by the contract. Among these are promises of "the best possible nursing care" and "the highest standards of care", with rights "to dignity in dying as in living", "to safe ... areas for living", "to physical security", and "to the best possible health care". For these contractual breaches, plaintiffs ask in Count II for actual damages of $1,504,084.48, these being identical in makeup to the actual damages requested in Count I.

The trial court sustained defendants' motion to dismiss both Count I and Count II on the ground that the petition failed to state a claim for relief, the reasons behind the motion being, in general, that the Missouri wrongful death statute, § 537.080, provides the exclusive remedy applicable to the circumstances alleged in plaintiffs' petition and, hence the remedy given by § 198.093 of the Act does not lie; that § 198.093 unconstitutionally discriminates against defendants and denies them their rights to due process and equal protection;

that as to Count II (in which only the Evergreen corporation is sued), no action for wrongful death can be based on breach of contract.

I

Count I of the petition rests primarily on two related sections of the Act. The first is the so-called residents' bill of rights found at § 198.088. As quoted in pertinent part in plaintiffs' petition, it provides:

1. Every facility, in accordance with the rules applying to each particular type of facility, shall insure that:

. . . .

(6) Each resident admitted to the facility:

. . . .

(g) Is free from mental and physical abuse, and free from chemical and physical restraints ...

. . . .

(i) Is treated with consideration, respect, and full recognition of his dignity and individuality . . . .

"Facility" is defined by the Act to include a "skilled nursing facility", which is also defined. Section 198.006(7) and (17). Defendants' facility is alleged to be such a skilled nursing facility.

The second section relied upon is the private enforcement provision of § 198.093. It allows any resident or former resident of a facility who is deprived of any right created by § 198.088, or "the estate of a former resident so deprived," to make a written complaint within 180 days of the deprivation or injury to the Missouri attorney general, who is to review the complaint and who may initiate thereupon any legal action available to him under the Act. But if the attorney general does not initiate action within 60 days, the complainant is empowered, within 240 days of filing the complaint, to bring a civil action "against any owner, operator or the agent of any owner or operator to recover actual damages." [3]

3. Stiffelman died May 31, 1980. His injuries were alleged to have occurred two to three weeks prior to his death. Plaintiffs filed their

written complaint with the attorney general on October 29, 1980. The present action was filed

In addition, "[t]he court may, in its discretion, award punitive damages which shall be limited to the larger of five hundred dollars or five times the amount of special damages, unless the deprivation complained of is the result of an intentional act or omission causing physical or emotional injury to the resident, and may award to the prevailing party attorney's fees based on the amount of time reasonably expended." The Act further provides that no defendant who pleads and proves as an affirmative defense "that he exercised all care reasonably necessary to prevent the deprivation and injury" complained of shall be liable under this section. § 198.093.4. The provisions of the Act are not to be construed "as abrogating, abridging or otherwise limiting the right of any person to bring appropriate legal actions in any court of competent jurisdiction to insure or enforce any legal right or to seek damages." § 198.093.6.

Defendants' arguments against applicability of the new statutory remedy to plaintiffs' Count I justify a brief review of the scheme of the Act as a whole and the concerns from which it emerged. The effort at this is aided considerably by the symposium issue of the St. Louis University Law Journal on nursing home law (Vol. 24, No. 4; March 1981). The following discussion of the Act and its background draws liberally, though not always with due acknowledgment, from three contributions in that publication: Vossmeyer & Felix, *The Missouri Omnibus Nursing Home Act of 1979: A Legislative History*, 24 St.L.U.L.J. 617 [hereinafter cited as Vossmeyer & Felix, *Legislative History*]; Hoffman & Schreier, *A Private Right of Action Under Missouri's Omnibus Nursing Home Act*, 24 St.L.U.L.J. 661 [hereinafter cited as Hoffman & Schreier, *Private Right of Action*]; and Slocum, *Comment, A Critical Analysis: The Patient Abuse Provisions of the Missouri Omnibus Nursing Home Act*, 24 St.L.U.L.J. 713 [hereinafter cited as Slocum, *Patient Abuse Provisions*].

"Our 'primary responsibility', *Goldberg v. Administrative Hearing Com-*

mission, 609 S.W.2d 140, 144 (Mo. banc 1980) is 'to determine and give effect to the intent of the legislature', *State v. White*, 622 S.W.2d 939, 944 (Mo. banc 1981) *cert. denied*, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982)," *Wells et al. v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207 (Mo. banc 1983). The Act before us, consisting of sixty-three sections and repealing and replacing the former 1957 licensure law, is a comprehensive regulation of the nursing homes of this state. In rejecting the contention that the Act's predecessor, the 1957 statute, should be strictly construed, this court made the following observations which bear repeating here: "The obvious purpose of this statute is to protect the health and safety of citizens who are unable fully to take care of themselves, particularly the more elderly persons, who, from necessity or choice, spend their later years in homes of the type which the statute would license or regulate ... Such an enactment as this is a vital and most important exercise of the state's police power. ... As such its construction, consistent with its terms, should be sufficiently liberal to permit accomplishment of the legislative objective ..." *State ex rel. Eagleton v. Patrick*, 370 S.W.2d 254, 257 (Mo.1963). *See*, also, Annot., 97 A.L.R.2d 1187, 1189 (1964).

The Act before us is an exercise of the police power of the state, directed to the protection of the health, safety, and welfare of a large and increasing nursing home population. It regulates private institutions designed to shelter, feed and care for sick, aged and infirm persons, and bears a reasonable relation to the health, safety, and welfare of the community. The core provisions of the Act relate to the licensure of the state's nursing homes under the regulatory authority conferred upon the Missouri department of social services.

The Act classifies four different kinds of boarding and nursing homes in accordance with levels of care provided. These are: adult boarding facility, residen-

April 21, 1981. Thus, all deadlines were met and no limitation problem appears.

tial care facility, intermediate care facility, and skilled nursing facility. See § 198.-006(3), (9), (16), and (17). A "skilled nursing facility", which defendants' facility is alleged to be, by definition provides the highest level of care. This amounts to twenty-four-hour skilled nursing care and treatment services, which are stated to be

> those services commonly performed by or under the immediate supervision of a registered professional nurse for individuals requiring twenty four hours a day care by licensed nursing personnel including acts of observation, care and counsel of the aged, ill, injured or infirm, the administration of medications and treatments as prescribed by a licensed physician or dentist, and other nursing functions requiring substantial specialized judgment and skill.

Section 198.006(17). Skilled nursing facilities qualify for participation in Medicaid reimbursement programs under the federal Social Security Act; the survey for Medicaid certification is conducted by the department of social services at the same time the facility is inspected for its state license. Section 198.045.

One of the requisites to licensing and relicensing of each of the classifications of nursing homes by the department of social services is that the facility and its operator be in compliance with the requirements of § 198.088, the bill of rights provision. § 198.022.1(5).

■ The Act is addressed to the broad expanse of problems in the operation of nursing homes which have surfaced in substantial degree since the advent of Medicaid in the mid-1960's and the mushrooming of the nursing home business. From the health and safety of nursing home residents, to their personal privacy and autonomy, to the protection of their funds and property, to the solvency of nursing home operators, to prevention of Medicaid fraud, the Act is a major legislative effort towards remedying indigenous areas of abuse in the operation of nursing homes.

The abuses to which nursing home operations and their residents are susceptible are well known and documented. "Nursing home patients present particular problems because of several factors: (1) their advanced age (average 82); (2) their failing health (average four disabilities); (3) their mental disabilities (55 percent are mentally impaired); (4) their reduced mobility (less than half can walk); (5) their sensory impairment (loss of hearing, vision, or smell); (6) their reduced tolerance to heat, smoke and gasses; and (7) their greater susceptibility to shock." Nursing Home care in the United States: Failure in Public Policy, Supporting Paper No. 7, Report of the Subcommittee on Long-Term Care of the Special Committee on Aging, United States Senate, 94th Congress, 2d Session, xx (1976), as quoted in *Friedman v. Division of Health*, 537 S.W.2d 547, 548–49 (Mo. banc 1976); *See,* also, F. Moss & V. Halamandaris, Too Old, Too Sick, Too Bad: Nursing Home in America (1977); M. Mendelsohn, Tender Loving Greed (1974); C. Townsend, Old Age: The Last Segregation (1971). Only four to nineteen percent of those entering a nursing home depart alive. Nursing Home Access: Making the Patient Bill of Rights Work, 54 J.Urb.L. 473, 474 (1977). More than one half need help in dressing, and more than one in ten needs help in eating. S. Johnson, Nursing Home Receiverships: Design and Implementation, 24 St. L.U.L.J. 681, fn. 1 (1981). One of the startling findings of the Senate subcommittee was that nursing home patients frequently suffer from neglect or are the targets of intentional abuse. Report at 165–73. As one of the symposium commentators states: "Many nursing home patients do not have the physical strength to endure even one episode of abuse or neglect." Slocum, *Patient Abuse Provisions, supra,* at 721.

■ Turning to defendants' argument that § 198.093 of the Act makes available no remedy to plaintiffs in this case, because Count I purports to set forth a cause of action for wrongful death under § 198.093, whereas the sole and exclusive remedy for wrongful death is under § 537.080, we note that the private remedy given by § 198.093 coexists with an array of governmental de-

vices, such as injunctions, civil penalty and receivership, as well as the ultimate sanction of license revocation. §§ 198.067, 198.099 and 198.036. The legislature no doubt saw the availability of remedies less drastic than the shutdown of a deficient home as being in the best interest of nursing home residents, for many of whom forced transfers occasioned by revocation would be dispiriting and even life-threatening. We have recognized this problem in *Friedman v. Division of Health, supra,* at 550, as has the United States Supreme Court, *see O'Bannon v. Town Court Nursing Center,* 447 U.S. 773, 784, fn. 16, 100 S.Ct. 2467, 2475, fn. 16, 65 L.Ed.2d 506 (1980).

■ The provision authorizing an action for damages for breach of the rights of nursing home residents to be free from mental or physical abuse is one reasonably directed toward bringing about compliance with the provisions of the Act. The private remedy for violations of the rights of residents secured by §§ 198.088 and 198.090, as the remedy is authorized by § 198.093, looks to private parties for some degree of policing under the Act.[4] It is a key feature of the Act, adopting the "private attorney general" concept, with the inducement of recoverable actual damages, and in some instances, punitive damages and attorney's fees, all to the end of securing maintenance of nursing home standards. The legislature well could have included it upon the rationale "that government cannot do everything and that some requirements of the Act can best be enforced by those most directly involved." Vossmeyer & Felix, Legislature History, *supra,* at 600.

■ Defendants would characterize the claim of plaintiffs under Count I as an action for wrongful death, but, as plaintiffs argue, their action "is certainly not the typical death action brought to compensate family members for the loss of the support and services of their decedent". As a prac-

tical matter, common sense and common knowledge tell us that rarely will there be found a loss of support or services to anyone from the death of an elderly, enfeebled nursing home patient. That would be true in particular here, where the decedent is alleged to have been ninety years of age, a resident of the nursing home for over a year, in a frail, defenseless and dependent condition and in need of nursing and health care. Plaintiffs state that while they are seeking redress to the decedent's estate, it is for "primarily, the life-time pain and suffering of the decedent (thus giving the § 198.093 claim overtones more of a survival than a death action)". It is significant, we believe, as discussed later herein, that § 198.093 grants standing to sue to "the estate of a former resident", as well as to a resident or former resident of a nursing home. Plaintiffs argue that the legislature by enactment of § 198.093 intended to fashion a new remedy for physical and emotional abuse in the nursing home, fatal as well as nonfatal. We agree.

■ While it is true that the Count I alleges that the decedent died as a result of injuries inflicted upon him by the staff at the nursing home, regardless of what we call the action, what the plaintiffs are seeking under Count I is damages for decedent's injuries, pain and suffering sustained during his lifetime, over the period of two or three weeks when it is alleged he lay unattended and unaided despite his deteriorating condition and grave suffering brought on by the thirteen rib fractures, subpleural hemorrhaging and lesions to the chest, face, flanks, abdomen, legs, arms and hands. There is no claim made of loss of support or pecuniary damages found in the reasonable value of loss of services, consortium, companionship, comfort, instruction, guidance, counsel, training and support to those deprived thereof by the death as allowed under § 537.090.

---

4. "In response to the ineffectiveness of traditional state remedies for enforcement of nursing home statutes, a number of states have included private right of action provisions in their nursing home acts." Hoffman & Schreier,

*Private Right of Action, supra,* at 665. Specifically, the authors name New York, West Virginia, New Jersey, Massachusetts, Oklahoma and Ohio. *Id.* at 665–67.

■ The damages allowed under § 198.-093 are for actual damages (leaving out for the moment punitive damages and attorney's fees). According to the allegations of the Count I, the decedent suffered the injuries alleged. If so, then he sustained actual loss for which compensation is allowed in the form of actual damages. Actual damages are compensatory and are measured by the loss or injury sustained. *Chappell v. City of Springfield,* 423 S.W.2d 810, 814 (Mo.1968); *State ex rel. St. Joseph Belt Ry. Co. v. Shain,* 341 Mo. 733, 108 S.W.2d 351, 356 (1937); *Hussey v. Ellerman,* 215 S.W.2d 38, 42 (Mo.App.1948). The injury here was sustained by the decedent, during his lifetime, not by his executors or his estate. Medical expenses would likewise be actual damage to the decedent. Burial expense, of course, would not be incurred until after death, but it would be actual damage, this time to the estate, rather than decedent.

■ For a long time in Missouri an action for damages for injuries which did not result in death, and an action for damages for death which was brought about by injuries were mutually exclusive. *Damerel v. Sabina Realty Corp.,* 603 S.W.2d 96, 98 (Mo. App.1980). This is no longer true. By virtue of the 1979 amendment to the wrongful death act, Missouri now has a combined death and survival statute under which damages may be recovered for the death and also for such damages as the deceased may have suffered between the time of injury and time of death. Laws of 1979, S.B. 368, p. 630 (§ 537.080, RSMo 1982 Supp.). In the case at bar, private redress is sought primarily for the lifetime pain and suffering of the decedent, together with funeral expenses and expenses of the last illness, plus a claim for punitive damages on the ground that the wrongs were intentional and for attorney's fees. The protection afforded by the Act which is mainly involved in this case is the right to be "free from mental and physical abuse". § 198.-088.1(6)(g).

We conclude that the legislature, in the exercise of its police power, cognizant of the deficiencies of traditional remedies, by the enactment of § 198.093 intended to provide a remedy for physical and emotional abuse in the nursing home, fatal as well as nonfatal. To conclude that the legislature did not intend to allow recovery of actual damages for intentional injuries inflicted on a resident and for the pain and suffering sustained by him as result of said injuries when it turns out, as would be expected, that the injuries ultimately produce his death, would lead to the same incongruity expressed by Professor Prosser in his comment on the rule announced in *Baker v. Bolton,* 1 Camp. 483, 170 Eng.Rep. 1033 (K.B.1808) that no cause of action existed at common law for death: "The result was that it was more profitable for the defendant to kill the plaintiff than to scratch him." W. Prosser, Handbook of the Law of Torts, § 127, at 902 (4th ed. 1971) (footnote omitted).

■ If, as defendants contend, the death of a resident of a nursing home wiped out all the actual damages which had been sustained by the resident, where he has undergone the injuries and suffering which were allegedly inflicted upon Mr. Stiffelman prior to his death, and the plaintiffs (who would be, in event of the resident's death, his executors) were restricted to the actual damage the estate could show by virtue of the death of the decedent, the damages would be non-existent, or miniscule at best. Exposure to such a claim would be scant help in enforcing compliance by the nursing home with observance of the right of the resident to be free from mental and physical abuse during his stay in the nursing home. Such an interpretation would mean that the legislature, in giving "the estate of a former resident so deprived" of his rights, standing to bring a civil action to recover actual damages had intended a useless act, a right to sue with no practical effect. It is well established, however, that the presumption is that the legislature did not intend for any part of a statute to be without meaning or effect. It is not presumed to have intended a useless act. The presumption is that it intended its act to have applicability and effect. *City of*

*Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441 (Mo.1980); *Protection Mut. Ins. Co. v. Kansas City,* 504 S.W.2d 127 (Mo.1974); *Graves v. Little Tarkio Drainage Dist. No. 1,* 345 Mo. 557, 134 S.W.2d 70 (1940). Here that means that the executors can recover the actual damages sustained by the decedent prior to death, if the proof is there.

We do not agree with defendants' argument that because Missouri has a wrongful death statute that it necessarily follows that said statute affords the exclusive remedy in the face of another statute providing a remedy where death occurs in a special setting. Statutory remedies have been provided in a variety of narrowly defined circumstances where death occurs, such remedies existing side by side with general death laws, examples being death benefits under workers' compensation laws, statutes allowing for recovery against public carriers or governmental entities, and for scaffold and dram shop violations. *See* generally 1 S. Speiser, Recovery for Wrongful Death, §§ 1:14 ("A number of states have statutes which confer a special right of action where death is caused under particular circumstances.") to 1:16 (2d 1975). *See, also, Malone, American Fatal Accident Statutes— Part I: The Legislative Birth Pains,* 1965 Duke L.J. 673 where the author describes the origin of many "special" death laws in their concurrent operation with the general death laws of the enacting state. *See,* also, *National Bank of Bloomington v. Norfolk & Western Railway Co.,* 73 Ill.2d 160, 23 Ill. Dec. 48, 52, 383 N.E.2d 919, 923 (1978), holding that the Illinois wrongful death act is not the exclusive remedy when death results from a tortious act.

■ Defendants cite several cases on their proposition that the wrongful death statute, § 537.080, is the exclusive remedy so far as anything connected with Mr. Stiffelman is concerned. All are distinguishable. See *Glick v. Ballentine Produce,* 396 S.W.2d 609, 614 (Mo.1965); *State ex rel. Slibowski v. Kimberlin,* 504 S.W.2d 237, 239 (Mo.App.1973); *Klein v. Abramson,* 513 S.W.2d 714, 716 (Mo.App.1974); *State ex rel. Kansas City Stock Yards v. Clark,* 536 S.W.2d 142, 144 (Mo. banc 1976). Discussion in these cases to the effect that there is "one claim", *Kansas City Stock Yards,* at 145, or that the statute is "preclusive", *Slibowski* at 239, does not address the issue at bar. Those cases either involve attempts by parties effectively to amend the wrongful death statute, *Kansas City Stockyards: Slibowski,* or to extend its reach to plaintiffs not contemplated by its language, *Klein.* There is nothing in the general wrongful death statute or in any other law or decision which declares that the wrongful death act affords the exclusive remedy in the face of another statute providing a remedy where death occurs in more particularized circumstances, such as we have here with an Act pertaining only to nursing homes.

There is an additional factor which shows that the wrongful death statute is not the exclusive remedy where death occurs to a nursing home resident under circumstances covered by the Act. Under the 1979 amendment to the wrongful death act, there is no provision for an action to be brought by the estate or the executors of the deceased. Laws of 1979, S.B. 368, p. 630 (§ 537.080, RSMo 1982 Supp.) The wrongful death act used to provide that if there were no husband, wife, minor child, father or mother, then suit could be maintained by the administrator or executor of the deceased. § 537.080, RSMo 1978. This provision was eliminated in the 1979 amendment, which provides that if there is no spouse, children, father or mother (class 1) and no brother, sister or their descendents (class 2), then the action can be brought by a plaintiff ad litem. There is no provision for suit by the administrator or executor.

■ The Omnibus Nursing Home Act, however, passed in the same legislative session as the 1979 amendment to the wrongful death act, grants standing to sue for violation of a resident's rights under §§ 198.088 and 198.090 not only to a resident or former resident, but also to "the estate of a former resident so deprived." § 198.093.1. We do not believe the legislature would have included the resident's es-

tate as an authorized complainant and party plaintiff unless it was intended to encompass infliction of physical and emotional injury resulting in death within the remedy created and to authorize an action such as the present one, despite death having occurred as result of the deprivation of decedent's rights.

As pointed out earlier, the current Missouri wrongful death act permits recovery of damages for injuries sustained by the deceased prior to death, along with damages resulting from the death. If there is any overlapping between what is covered by actual damages under the Act before us and the damages recoverable under the wrongful death statute (which we do not undertake to decide), the general rule against double recovery for the same tort or damages will protect the defendant and can be worked out on a case by case basis when and if an attempt is made to collect both under the Act and the wrongful death statute.[5] Here the action is restricted to a claim under the Act.

Defendants attempt various constitutional attacks on the Act. One is that the definition of "abuse", § 198.006(1), as "the infliction of physical, sexual or emotional injury or harm" is so vague, uncertain and ambiguous that it could "conceivably" render a nursing home operator or owner liable for any type of injury to a resident and thus violates due process. We see no need to adopt any open-ended or catch-all construction of the term as urged by defendants. We have declined to do so in construing the language in § 565.012.2(7) of the death penalty statute as to the offense being "outrageously or wantonly vile, horrible or inhuman" or as involving "torture, or depravity of mind", *State v. LaRette,* 648 S.W.2d 96, 102 (Mo. banc 1983); *State v. Blair,* 638 S.W.2d 739, 758 (Mo. banc 1982), *cert. denied,* — U.S. —, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983); *State v. Mercer,* 618 S.W.2d 1, 10 (Mo. banc 1981), *cert. denied,*

454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981) and we decline to do so here. The case at bar lies at the core. Taking the allegations of Count I at face value, this case involves blows, kicks, kneeings and bodily throwings done intentionally, viciously, and murderously by the nursing home staff over a period of several weeks, producing thirteen rib fractures, subpleural hemorrhaging, with marked lesions over most of his body and extremeties, together with leaving decedent to suffer unattended and unaided for several weeks. There is nothing vague or uncertain about the abuse alleged here. Beyond question it would constitute physical and emotional abuse in anyone's mind. The definition in the Act is essentially the same as that used in the Missouri child abuse law, § 210.110.1(1), RSMo 1978, and in child abuse laws of other states. The term is important to the reporting requirements of § 198.070 of the Act as well as to § 198.088. The legislature no doubt purposely kept the statutory formulation unburdened with technical detail on the basis that "[s]ociety knows what abuse is, even without specific definitions." *Slocum, Patient Abuse Provisions, supra,* at 716, quoting from *Daly, Willful Child Abuse and State Reporting Statutes,* 23 Miami L.Rev. 283, 283–84 (1969). Another source states: "There is probably little dispute that the term 'physical injury' is one of common understanding. It would include such things as bruises, lacerations, abrasions, welts, choke marks, burns, bites, and fractures." Krause, *Child Abuse and Neglect Reporting Legislation in Missouri,* 42 Mo.L.Rev. 207, 224 (1977). So it is here. The case before us is squarely within the definition. Questionable cases can await presentation at a future time upon their particular facts and need not be speculated upon here. We find no merit in defendants' contention.

Defendants also contend that plaintiffs are unconstitutionally attempting to de-

---

5. For those interested, suggestions for handling such matters can be found in Restatement (Second) of Judgments, § 92.2 (Tent.Draft No. 3, 1976) and in *Sea-Land Servs., Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) and *Alfone v. Sarno,* 87 N.J. 99, 432 A.2d 857 (1981).

prive them of the traditional defenses and elements of damage maintainable in a wrongful death action under § 537.080, particularly as to contributory negligence and mitigating circumstances.

As earlier pointed out, we have concluded that the action before us is separate and apart from an action under the wrongful death statute and is not barred by the latter. Count I alleges an intentional injury, dealt decedent "intentionally, viciously and murderously". The law is well established that contributory negligence does not bar recovery by the victim of an intentional tort. See Restatement (Second) of Torts, § 481 (1965); W. Prosser, Law of Torts, § 65, p. 426 (4th ed. 1971), and Ross v. Clouser, 637 S.W.2d 11, 15 (Mo. banc 1982), Welliver, J., dissenting. Despite this, however, the Act gives the defendant the benefit of the affirmative defense set forth in § 198.093.4, which provides:

> No owner or operator who pleads and proves as an affirmative defense that he exercised all care reasonably necessary to prevent the deprivation and injury for which liability is asserted shall be liable under this section.

It is within the power of the legislature to narrow the issues in litigation. See, for example, the elimination of previously existing divorce defenses, § 452.310, RSMo 1978, and the elimination of the fellow servant defense in railroad and mining damage suits, the constitutionality of the latter being upheld in Powell v. Sherwood, 162 Mo. 605, 63 S.W. 485 (1901) and Hawkins v. Smith, 242 Mo. 688, 147 S.W. 1042 (1912). In the case at bar, the plaintiff must prove the allegations of his petition and defendant can dispute these, and, if successful, prevail. Or defendant may assert the affirmative defense that no matter what plaintiff contends, defendant exercised all care reasonably necessary to prevent what happened to plaintiff, § 198.093.4, supra. We see no deprivation of due process here.

Defendants contend that § 198.093 is further violative of due process in that it provides for assessment of punitive damages in the absence of any required showing of legal malice, contrary to the Missouri law. We do not believe the statute supports this contention. Section 198.093.3 provides that the court may, in its discretion, award punitive damages which shall be limited to the larger of five hundred dollars or five times the amount of special damages, unless the deprivation complained of is the result of an intentional act or omission causing physical injury to the resident. Plaintiffs have pleaded that the injuries inflicted upon their decedent, Mr. Stiffelman, were intentional. If they are not to be bound by the $500.00 or five times special damages limitation on punitive damages, it is necessary that they plead and prove intentional physical or emotional injury. The suit therefore raises no question concerning the allowance of punitive damages for unintentional conduct.

In order to recover punitive damages, plaintiffs will be required to use MAI 10.01 [1978 Revision], where (paraphrasing to some extent) if the jury finds the issues in favor of the plaintiff and if the jury believes the conduct of the defendants as submitted in plaintiffs' verdict directing instruction was "willful, wanton, or malicious", then in addition to any damages awarded under the actual damage instruction the jury may award an additional amount as punitive damages in such sum as they believe will punish defendants and deter them and others from like conduct. The term "malicious" is required to be defined as set forth in MAI 16.01 [1978 Revision]. There is nothing in the statute changing the meaning of punitive damages as heretofore established in Missouri and we find no merit in defendants' contention to the contrary.

Defendants' final constitutional objection is that § 198.093 violates equal protection; that said statute makes defendant nursing home an insurer of freedom from mental and physical abuse of any resident, but that the statute is not applicable to all nursing homes in that there is excluded from any medical supervision those homes relying upon spiritual healing, without any rational explanation or distinction.

A reading of § 198.093 itself shows that it contains no exclusions and we do not agree, for reasons previously expressed, that § 198.093 makes the nursing home an insurer. Defendants do not state in their brief which section of the Act they contend makes the exclusion to which they refer, but we assume they have in mind § 198.042, which is entitled "Medical supervision for residents relying on spiritual healing not required", the first sentence of which reads as follows:

Nothing in sections 198.003 to 198.096, or the rules and regulations adopted pursuant thereto, shall be construed as authorizing the medical supervision, regulation or control of the remedial care or treatment of those residents who rely solely upon treatment by prayer or spiritual means in accordance with creed or tenets of any well-recognized church or religious denomination.

■ This is no more than a reasonable classification by the legislature that medical supervision rules are not to be applied to the care or treatment of those residents who rely upon treatment by prayer or spiritual means in accordance with their religion. It in no manner purports to exclude non-medical nursing homes from adhering to the requirement of freedom from mental and physical abuse as required by § 198.-088.1(6)(g) and as defined by § 198.006(1). In fact, the next and final sentence of § 198.042, which reads:

All remaining rules and regulations and minimum standards not in conflict with this section shall apply.

makes it quite clear that the provisions against physical and mental abuse which are being applied against the defendants here apply with equal force to a nursing home where the treatment is solely by prayer or spiritual means. We see no equal protection problem here or need to take the time and space required to discuss equal protection doctrines of suspect class, impingement upon fundamental rights, etc., and strict judicial scrutiny or whether the classification is rationally related to a legitimate state interest, as would be called for in an appropriate case. *See State Board of Registration for the Healing Arts v. Giffen,* 651 S.W.2d 475 (Mo. banc 1983). There is no classification here to examine. All are treated the same in respect to prohibition against physical or mental abuse to a resident. Defendants' equal protection claim is denied.

II

As said earlier, the trial court also sustained a motion to dismiss as to Count II of plaintiffs' petition. Defendant nursing home corporation is the sole defendant in Count II.

Count II incorporated by reference the allegations of Count I as to the capacities of the plaintiffs as executors, the corporate existence of the defendant, the admission of the decedent to the facility, his death on May 31, 1980 as result of the injuries inflicted upon him, and the allegations about how the injuries were received, their extent, the effect on decedent and his lying unattended and unaided while deteriorating and dying.

Count II next alleges that the admission of Mr. Stiffelman to the Evergreen facility was pursuant to a written contract, dated May 17, 1979, copy of which is attached as an exhibit and incorporated into the petition. Count II then sets forth certain terms of the contract by which Evergreen promised to care for decedent in accord with certain "patient care policies" by which he was to receive "the best possible nursing care"; that the contract guaranteed certain "human rights" to decedent, including rights to the highest standards of care, to be treated as an intelligent and sensitive human being, to courteous consideration, to dignity in dying as in living, to safe areas for living, to physical security, to the best possible health care, and to be free from physical restraint.

Plaintiffs allege full compliance as to decedent's part of the contract, but that defendant violated its part of the contract by failing to provide him with the best possible nursing care and the highest standards of care as agreed and by failing to secure to him his promised human rights set forth above; that "the beating, physical and mental suffering, and death of their decedent, as more fully described in paragraphs 4 and

5 above, resulted from the foregoing contractural breaches of defendant ... all to plaintiffs' damage in the amount of $1,500,-000" and that plaintiff "additionally incurred, by reason of such breaches, expenses for the burial of the decedent in the amount of $1,878.48 and for his final medical care in the amount of $2,206.00", making total damages sought of $1,504,084.48 under Count II. No effort is made to claim punitive damages in Count II. Count II makes no mention of the Omnibus Nursing Home Act.

Defendant's position is that Missouri law does not recognize any contractual right to sue for wrongful death and hence Count II fails to state a claim upon which relief could be granted.

 Plaintiffs take the position that Count II seeks recovery for, "as the dominant element of compensatory damage, the decedent's pain and suffering following his beatings and before his death" and that "the damages are tied to the defendant Evergreen corporation's failure to provide the care and physical security contractually promised to the decedent. It sounds in straight contract and makes no reliance on the wrongful death statute." We agree that Count II is not based on the wrongful death statute and we have held in the earlier part of this opinion that the legislature, by the enactment of § 198.093 intended to fashion a new remedy for physical and emotional abuse in a nursing home, fatal as well as nonfatal. However, it is firmly established that in Missouri the courts did not recognize a cause of action for wrongful death in any manner prior to the enactment of the wrongful death statutes. *State ex rel. Kansas City Stock Yards Company v. Clark,* 536 S.W.2d 142, 144 (Mo. banc 1976). In *Bloss v. Dr. C.R. Woodson Sanitarium Co.,* 319 Mo. 1061, 5 S.W.2d 367, 368 (1928), this court declared that "the wrongful death statutes confer a cause of action ex delicto, not one ex contractu". Plaintiffs admit and plead that decedent's injuries from beatings resulted in his death. That means plaintiffs must proceed under appropriate statutory authority, which in this instance is § 198.093, as they have done in Count I.

We know of no statutory authorization for an action based on contract where death results from injuries sustained by breach of the contract and plaintiffs cite none. Although Count II is framed in terms of breach of contract, the legal effect is to seek damages for beating decedent so severely that he was badly injured, lingered for a time, and died. See *State ex rel. Sisters of Mary v. Campbell,* 511 S.W.2d 141, 146 (Mo.App.1974). What was done to Mr. Stiffelman would give rise to a cause of action under the Act whether there was any contract or not. The trial court was correct in dismissing Count II.

The judgment of the trial court is reversed and the cause remanded for further proceedings with respect to Count I. The judgment of the trial court is affirmed as to dismissal of Count II.

RENDLEN, C.J., HIGGINS, GUNN and DONNELLY, JJ., and HENLEY, Senior Judge, concur.

WELLIVER, J., not participating.

BILLINGS and BLACKMAR, JJ., not participating because not members of the Court when cause was submitted.