**Arthur FREEMAN and June Freeman, his wife, Plaintiffs–Respondents,**

v.

**Arthur LAWSON, a/k/a "Buck" Lawson, Defendant–Appellant.**

**No. 16696.**

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 29, 1990.

James L. Bowles, Ozark, for plaintiffs-respondents.

John F. Appelquist, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-appellant.

MAUS, Judge.

By Count I of their petition, plaintiffs Arthur Freeman and June Freeman (the Freemans) alleged defendant Arthur "Buck" Lawson (Lawson), on separate occasions, shot two of their bulls and prayed for double damages as provided in § 537.330. By Count II the Freemans sought an injunction to enjoin Lawson from shooting or otherwise harming any other animals owned by them. Lawson filed a counterclaim for damages resulting when the Freemans' Simmental bull allegedly ran into his truck. In a jury-waived trial, the trial court found the issues in favor of the Freemans. Upon Count I it found the Freemans sustained $2,500.00 actual damages and entered judgment for double damages of $5,000.00. It granted the injunction requested in Count II. The trial court denied Lawson's counterclaim. Lawson's four points on appeal attack the judgment on Count I and his counterclaim. The following is a summary of relevant facts established by a view of the evidence favorable to the Freemans.

The Freemans and Lawson lived on adjoining farms. The Freemans raised cattle. Lawson had not maintained his portion of the boundary fence and as a result cattle could go from one side to the other.

On November 1, 1986, plaintiff Arthur Freeman, apparently working near his house, heard gunshots. When he looked towards the area of the shooting, he saw Lawson's truck near the boundary line between the farms. Arthur Freeman also saw his Charolais bull run out into his field. By the time Freeman had opened two gates and driven to that field, he saw Lawson's pickup going down a hill to his barn. Arthur Freeman found that his bull had been shot with a shotgun and severely injured. Lawson denied any knowledge of the shooting of the Freemans' Charolais bull.

On October 25, 1987, plaintiffs Arthur Freeman and June Freeman and witness Grady Billick were vaccinating cattle in the corral near the Freeman house. They heard four or five gunshots near Lawson's house and saw Lawson's truck in the vicinity of the shots. Lawson had returned to his home and saw the Freemans' Simmental bull in his field. He testified it was fighting with his bull. The evidence established Lawson shot the Simmental bull with a shotgun and it ran through the open gate onto the road. Lawson followed and again shot the bull when it was on the road near the Freemans' property. The Simmental bull had been shot several times in the tail area and rear flank. Lawson testified he first tried to "shoo" the bull back across the fence but the bull charged and Lawson took cover in his truck. He said the bull rammed into the truck. He then shot the Simmental bull once from inside his truck.

On review, this court-tried case is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the

law. When determining the sufficiency of the evidence, the evidence is viewed in the light most favorable to the prevailing party and all contrary evidence is disregarded. *Nelson v. Baker,* 776 S.W.2d 52, 53 (Mo. App.1989); *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654 (Mo. banc 1989).

Lawson's first point is that any damages awarded to the Freemans should not have been doubled because there was no showing that the shootings by Lawson were wanton or malicious as required under § 537.330. The facts and circumstances surrounding the two incidents are remarkably similar. Both the Charolais and Simmental bulls were shot at close range in the hind quarters, testicles and rear flank area. None of the shots could be taken out of the Charolais because they were too deeply embedded in the bull's body. The Simmental bull was shot several times, the last time when the bull was on the road in front. of the Freemans' property. The wounds destroyed both animals as breeding bulls and they were sold for hamburger.

The trial court "can draw all reasonable inferences from the evidence presented to it and can base its ultimate conclusions upon such reasonable inferences. *State ex rel. Eagleton v. Patrick,* 370 S.W.2d 254, 257[5], 97 A.L.R.2d 1180, 1184 (Mo.1963); *Novak v. Akers,* 669 S.W.2d 644, 647 (Mo.App.1984); *Wills v. Alcorn,* 636 S.W.2d 142, 145 (Mo.App.1982)." *Neal v. Neal,* 776 S.W.2d 861, 868 (Mo.App.1989). The trial court can believe all, part or none of the testimony presented by a witness. *T.B.G. v. C.A.G.,* supra. There was sufficient evidence from which the trial court could find that in shooting the bulls Lawson acted in a wanton or malicious manner within the meaning of § 537.330. Cf. *State ex rel. Smith v. Greene,* 494 S.W.2d 55 (Mo. banc 1973), and *Burnett v. Griffith,* 769 S.W.2d 780 (Mo. banc 1989). The point is denied.

By his second point, Lawson contends that the trial court erred in calculating the Freemans' damages because the award given was in excess of damages established by the evidence. After being wounded and unable to perform as a breeding bull, each animal was sold at the public stockyards. The Charolais bull sold for $1,232.25 and the Simmental bull sold for $994.70. The applicable measure of damages is the difference in the fair market value of the bulls before and after they were shot. *Barber v. M.F.A. Milling Co.,* 536 S.W.2d 208, 210 (Mo.App.1976). Lawson concedes the sale prices of the bulls established their market value after the shootings. To support his calculation of damages, Lawson relies upon the testimony of his expert witness. This witness testified that before being shot the value of the Charolais bull was $1,300.00 and the Simmental bull was $1,500.00. However, the defendant ignores the testimony of Arthur Freeman. "An owner may testify, without further qualification, about the reasonable market value of his personal property that has been damaged or destroyed." *Farer v. Benton,* 740 S.W.2d 676, 678 (Mo.App.1987). Moreover, Arthur Freeman had dealt with cattle most of his life. He testified that before being shot the value of the Charolais bull was $3,000.00 and the value of the Simmental bull was between $4,000.00 and $5,000.00. It was in the province of the trial court to reject the valuation of Lawson's expert witness. The trial court's determination of actual damages of $2,500.00 is well within the range established by the testimony of Arthur Freeman. The trial court did not err in so assessing actual damages. *Straughan v. Murphy,* 484 S.W.2d 465, 472–73 (Mo.1972). The second point is denied.

Lawson's third point is that the trial court erred in excluding the opinion testimony of his son, Jerry Lawson, concerning the value of the bulls. That testimony was rejected upon the basis Lawson had not established a sufficient foundation for that opinion testimony. Lawson made an offer of proof of Jerry Lawson's opinion as to the value of the bulls before they were shot. By that offer, he valued the Charo-

lais bull at $1,200.00–$1,300.00 and the Simmental bull at $1,300.00–$1,350.00. In respect to each bull, he based his opinion on "what the market would be and about what he would weigh." The trial court accepted the proposition that before being shot each animal had a value as a breeding bull in excess of his market value. This, too, was within the province of the trial court. It is not necessary to consider the qualifications of Jerry Lawson. Even if there was a foundation for the rejected testimony, the exclusion of evidence did not take into account the value of the animals as breeding bulls and did not prejudice the defendant. The point is denied.

■ Lawson's last point is that the trial court erred by denying his counterclaim because the evidence establishing the counterclaim was uncontroverted by the Freemans. He bases this point upon the premise that he testified the Simmental bull rammed or butted his pickup and no one denied these facts. Lawson also testified that he shot the bull while it was ramming the pickup. The bull was shot in the rear. There was also evidence the pickup was primarily a "farm truck" which had been dented and beat up prior to the incident involving the Simmental bull. Lawson's wife testified that she could not be sure if the dents on the truck were made by the Freemans' bull or were already there. It is a reasonable inference from the evidence that the Freemans were not in a position to admit or deny Lawson's testimony. Nevertheless, the trial court was entitled to disbelieve Lawson's version and find that Lawson's truck was not damaged by the Simmental bull. *Whitenton v. Whitenton,* 659 S.W.2d 542, 546 (Mo.App.1983). This court defers to the trial court's determination of credibility. *Keller v. Friendly Ford, Inc.,* 782 S.W.2d 170, 173 (Mo.App. 1990); *In Interest of R.E.M.,* 712 S.W.2d 398, 402 (Mo.App.1986); Rule 73.01(c)(2).

The final point is denied and the judgment is affirmed.

CROW and PARRISH, JJ., concur.